## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 20 2015, 9:13 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Adam C. Squiller
Squiller & Harley
Auburn, Indiana

ATTORNEYS FOR APPELLEE

Chad L. Rayle
Thompson Smith
Smith, Smith & Rayle, P.C.
Auburn, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re: The Adoption of A.S.B.,
*Minor Child.*

S.B.,
*Appellant-Respondent,*

v.

K.E.,
*Appellee-Petitioner,*

May 20, 2015

Court of Appeals Case No.
57A03-1410-AD-383

Appeal from the Noble Circuit Court
Cause No. 57C01-1305-AD-5

Dekalb Circuit Court
Special Cause No. 17C01-1401-CB-6

The Honorable Kirk D. Carpenter,
Special Judge

**Robb, Judge.**

# Case Summary and Issue

[1]    A.B. gave birth to A.S.B. on June 12, 2010. As part of Child in Need of Services ("CHINS") proceedings initiated soon after A.S.B.'s birth, she was placed with K.E., her maternal grandmother. K.E. was appointed her guardian in August 2010. S.B.'s paternity of A.S.B. was established in March 2011. In May 2013, K.E. filed a petition to adopt A.S.B. to which A.B. ultimately consented. S.B. contested the adoption. The trial court issued a decree granting the adoption upon finding that S.B. was unfit and his consent was not required. S.B. now appeals the adoption decree, raising one issue for our review: whether the trial court erred in determining that S.B. was unfit to be a parent and that his consent to the adoption was therefore not required. Concluding the trial court's decision was not clearly erroneous, we affirm.

# Facts and Procedural History[1]

---

[1] Neither party's appendix is particularly helpful to this court. S.B.'s appendix consists of the Chronological Case Summary ("CCS"), the appealed order, and excerpts from the transcript and selected exhibits from the contested adoption hearing. K.E.'s appendix consists of excerpts from the transcript and additional exhibits from the contested adoption hearing. Indiana Appellate Rule 50(F) provides: "Because the Transcript is transmitted to the Court on Appeal pursuant to Rule 12(B), parties should not reproduce any portion of the Transcript in the Appendix." The "Transcript" is defined to include any exhibits associated with the proceedings. Ind. Appellate Rule 2(K). In essence, then, two appendices have provided only the CCS and the appealed order. In addition, we may not have the entire CCS. S.B. notes that the Noble County Clerk provided a CCS with "a sideways orientation" and was unwilling to provide "a correctly oriented" copy. Appellant's Appendix, Table of Contents n.1. However, it does not appear that the CCS was printed in landscape orientation but rather, the bottom of each page may be cut off. And if part of each page is not actually missing, it is certainly obscured by the binding.

[2]     When A.S.B. was born, both she and A.B. tested positive for methamphetamine. As a result, the Indiana Department of Child Services initiated CHINS proceedings and K.E. was ultimately named A.S.B.'s guardian. A.S.B. has continuously resided with K.E. since August 2010.

[3]     At the time of A.S.B.'s birth and continuing until the date of the adoption hearing, S.B. was incarcerated, first in an Indiana state prison and then in a federal penitentiary. His state imprisonment stemmed from a Class D felony failure to appear conviction. Petitioner's Exhibit 4. His federal imprisonment is the result of convictions for possession of a firearm in furtherance of a drug trafficking crime and possessing a firearm after a felony conviction. Petitioner's Exhibit 8. The sentencing order for his federal case was entered into evidence and reflects that the district court found he has a "breathtaking" criminal history, a "long history of substance abuse," and poses "a risk of future criminal conduct that is many times greater than the average criminal defendant." Petitioner's Exhibit 9. His release is currently scheduled for some time in 2024.

[4]     Father's grandparents have had visitation with A.S.B. throughout her life. In September 2013, K.E. and S.B.'s grandparents entered into an agreement for grandparent visitation that was approved by the court in the guardianship proceeding. S.B. has contact with A.S.B. only through his grandparents. He sends cards and letters to A.S.B. at their address, calls A.S.B. when she is visiting with them, and has seen A.S.B. three times in person when they have brought her to the prison to see him. In the guardianship proceeding, S.B. was ordered to pay $1.00 per week in child support while he is incarcerated effective

January 12, 2012. The trial court in this adoption proceeding found that until May 2, 2013, he had no ability to pay child support. S.B. had paid $135.00 in child support since June 2013.

On May 2, 2013, K.E. filed a petition for adoption of A.S.B. The trial court appointed Sally Lehman as A.S.B.'s guardian ad litem ("GAL"). A.B. and S.B. both filed motions to contest the adoption. On August 6, 2014, however, A.B. filed her consent to the adoption, a consent that she reiterated at the start of the adoption hearing. S.B. continued to contest the adoption. At the adoption hearing on August 26, 2014, A.B., K.E., and S.B. all testified. S.B.'s criminal history was explored, including not only the convictions for which he has been imprisoned during A.S.B.'s life but also his past criminal history as described in the sentencing order for his federal case. Both A.B. and K.E. testified to an incident prior to A.S.B.'s birth during which S.B. hit A.B. with a baseball bat, requiring her to be hospitalized. S.B. testified regarding his efforts to maintain contact with A.S.B and about various programs he had completed while in prison to improve himself, including parenting and drug treatment programs. The GAL recommended that it would be in the best interest of A.S.B. if the court did not require S.B.'s consent to the adoption because S.B. "is an unfit parent based on his history of criminal activity. Based on his history of *violent* activity. Based on the fact that he has been incarcerated since the birth of his child and will continue to be incarcerated for the foreseeable future." Transcript at 208 (emphasis in original). In addition, the GAL believed S.B.'s consent should not be required because of the

[s]imple passage of time and his inability to be there to provide the daily needs of the child. . . . He has not been her primary care giver, he's not been any sort of care giver. In fact, her bond is with [K.E.]. And to contemplate ever disrupting that bond does not seem to me to be what would be in the best interest of the child.

*Id.* at 209.

The trial court took the matter under advisement, allowed the parties to submit proposed findings and conclusions, and ultimately entered an order concluding:

18. [S.B.] has been continuously incarcerated since the child's birth. . . . [S.B.] testified that, according to prison records, his scheduled release date is in the year 2024.

* * *

24. [S.B.] had regular contact with his daughter during the times in which she was with her paternal relatives by telephone, writing, and visitation when available.

25. [S.B.] never physically cared for the child in any way during the child's life and has been incarcerated the entire time of the child's life.

26. [S.B.] has participated and completed various programs during his daughter's life to improve himself including Parenting, *Inside Out Dads*, and two drug treatment programs while incarcerated.

27. [S.B.] did not know very basic information regarding the child, including (a) the name of her preschool, (b) the name of her doctor, (c) the name of her dentist, (d) how much she weighed, or (e) how tall she is.

* * *

36. [S.B.] has an extremely violent criminal history, and he is a very dangerous individual. . . .

37. [S.B.] has attended Narcotics Anonymous while incarcerated. He used both methamphetamine and marijuana in the past. The Memorandum Upon Post-Remand Re-Sentencing also confirms [S.B.] has used cocaine as well.

* * *

39. The Court cannot find that [S.B.] abandoned his child.[2]

40. The Court cannot find that [S.B.] did not pay child support for his child when he could have and was required to.

41. [K.E.] has proven by clear and convincing evidence that [S.B.] is an unfit parent and that the best interests of the child would be served if the court dispensed with [S.B.'s] consent. *See* I.C. § 31-19-9-8(a)(11).

42. [S.B.'s] consent to the adoption is not required. [S.B.'s] parental rights are hereby terminated.

43. Due to [A.B.'s] consent, her parental rights are hereby terminated.

44. It is in the best interests of [A.S.B.] to be adopted by [K.E.].

Appellant's App. at 15-21. S.B. now appeals.

# Discussion and Decision

## I. Standard of Review

As relevant to this case, consent to an adoption is generally required from "[t]he mother of a child born out of wedlock and the father of a child whose paternity has been established" in a court proceeding. Ind. Code § 31-19-9-1(a)(2)(A). However, consent is not required from a parent if the "petitioner for adoption proves by clear and convincing evidence that the parent is unfit to be a parent;

---

[2] Because we were not provided with a copy of the petition for adoption, we do not know precisely what grounds were alleged to justify dispensing with S.B.'s consent. However, from the questioning at the hearing and the trial court's findings #14, 39, 40, and 41, it appears that K.E. alleged that 1) S.B. had abandoned or deserted A.S.B. for at least six months before the petition for adoption was filed, *see* Ind. Code § 31-19-9-8(a)(1); S.B. had, for a period of at least one year, knowingly failed to provide for A.S.B.'s care and support when he was able to do so as required by law or a judicial order, *see* Ind. Code § 31-19-9-8(a)(2)(B); and 3) S.B. was an unfit parent, *see* Ind. Code § 31-19-9-8(a)(11).

and the best interests of the child sought to be adopted would be served if the court dispensed with the parent's consent." Ind. Code § 31-19-9-8(a)(11).

[8] When we review a trial court's ruling in an adoption proceeding, the ruling will not be disturbed unless the evidence leads to only one conclusion and the trial court reached the opposite conclusion. *In re M.L.*, 973 N.E.2d 1216, 1222 (Ind. Ct. App. 2012). We do not reweigh the evidence; rather, we consider only the evidence most favorable to the decision along with reasonable inferences to be drawn from that evidence. *Id.* We also give considerable deference to the trial court's decision, recognizing that the trial court "is in the best position to judge the facts, determine witness credibility, get a feel for the family dynamics, and get a sense of the parents and their relationship with their children." *Id.*

[9] Here, the trial court sua sponte entered findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A).[3] We therefore apply a two-tiered standard of review: first, we determine whether the evidence supports the findings of fact and second, we determine whether the findings support the judgment. *E.W. v. J.W.*, 20 N.E.3d 889, 894 (Ind. Ct. App. 2014), *trans. denied*. The trial court's findings and judgment will not be set aside unless they are clearly erroneous. *Id.* A finding of fact is clearly erroneous if the record lacks evidence or reasonable inferences supporting it. *Id.* A judgment is clearly erroneous if the findings do not support the trial court's conclusions or the

---

[3] At least we can find in the record no request by either party that the trial court enter findings.

conclusions do not support the judgment. *In re G.Y.*, 904 N.E.2d 1257, 1260 (Ind. 2009).

## II. S.B.'s Parental Fitness

[10] As noted above, K.E. must prove by clear and convincing evidence that S.B. is unfit to be a parent. The term "unfit" is not defined in the statute. This court has previously defined "unfit" as "[u]nsuitable; not adopted or qualified for a particular use or service" or "[m]orally unqualified; incompetent." *In re M.L.*, 973 N.E.2d at 1223 (quoting Black's Law Dictionary 1564 (8th ed. 2004)). We have also looked to cases concerning the termination of parental rights for guidance in determining what makes a parent "unfit," as the termination and adoption statutes "strike a similar balance between the parent's rights and the child's best interests." *Id.* Termination cases look to factors such as a parent's substance abuse, mental health, willingness to follow treatment recommendations, lack of insight, and instability in housing and employment. *Id.* We have also considered the impact of incarceration on the parent's ability to provide for a child's care. *See In re H.L.*, 915 N.E.2d 145, 150 (Ind. Ct. App. 2009).

[11] Here, the trial court found S.B. to be unfit primarily because of his criminal history, violent propensities, and extended incarceration. The trial court also noted that S.B. had used illegal substances in the past. S.B. contends that the trial court's findings, none of which he disputes, do not support the conclusion that he is an unfit parent and that the judgment is therefore clearly erroneous.

Specifically, he argues that the evidence of S.B.'s unfitness is "exclusively based on conduct before the birth of the child" and does not take into account "his impressive efforts to change his life following the birth of A.S.B." Appellant's Brief at 13-14.

[12] S.B. is correct that the crimes for which he is currently incarcerated were committed prior to A.S.B.'s birth. And, as the trial court acknowledged in its findings, he has made efforts while incarcerated to improve himself. However, the event that precipitated his arrest occurred a mere month before A.S.B.'s birth,[4] indicating he did not view impending fatherhood as a reason to change his lifestyle. As a result, he has been incarcerated for A.S.B.'s entire life. Despite testifying that he has taken every opportunity to communicate with A.S.B., S.B. has never contacted A.S.B. during the times she is with K.E. and did not institute a court proceeding seeking to establish parenting time with her. The record reveals that S.B. has a significant history of substance abuse and criminal activity. He may now be making efforts to change his life and improve his prospects, but it will be nearly another decade before it can be known whether those efforts will bear fruit outside the strictures of prison. By the time S.B. is released from prison, A.S.B. will be fourteen years old and S.B. will have provided neither physical care nor meaningful financial support to her. And

---

[4] "On May 18, 2010, Danielle Hughes called the police in Warsaw, Indiana, asking for help in removing [S.B.] from her apartment. [S.B.] was a frequent visitor—they often used methamphetamine together—but on this visit they had an argument and [S.B.] threatened to kill her. The police arrived and arrested [S.B.] on an outstanding warrant . . . ." Petitioner's Exhibit 7 (Seventh Circuit Court of Appeals decision from S.B.'s appeal of his federal convictions).

because of S.B.'s incarceration, his emotional support of A.S.B. must come primarily in the form of phone calls and mail filtered through his grandparents.

[13] "It is well-settled that individuals who pursue criminal activity run the risk of being denied the opportunity to develop positive and meaningful relationships with their children." *In re H.N.P.G.*, 878 N.E.2d 900, 907 (Ind. Ct. App. 2008) (alteration and quotation omitted), *trans. denied*, *cert. denied*, 555 U.S. 1034 (2008). We applaud S.B.'s efforts to improve himself, but we cannot overlook the fact that he has been unable to care in any form for A.S.B. and will continue to be unable to provide such care within a meaningful timeframe. It is not so much the *fact* of S.B.'s crimes but the *consequences* of them that support the trial court's conclusion that K.E. has shown by clear and convincing evidence that S.B. is unfit.

## III. A.S.B.'s Best Interests

[14] K.E. must also show that it is in A.S.B.'s best interests that the court dispense with S.B.'s consent. S.B. does not specifically challenge the trial court's conclusion in this regard, but he does contend that his "constitutional right to raise his own children requires that he at least be given an opportunity to show that he is capable of being an appropriate father to A.S.B." Appellant's Brief at 14. That opportunity could not be provided in full until he is released from prison. However, A.S.B. needs support, permanency, and stability now, not ten years from now, and even then, there is no guarantee that S.B. would be a fit parent. *See id.* (stating that child's needs were "too important to force her to

wait" until her biological father was released from prison to determine whether he will be able to be a fit parent to her). Failing to dispense with the requirement of S.B.'s consent to the adoption would only unfairly prolong the instability surrounding A.S.B. since her birth due to her biological parents' choices.[5]

# Conclusion

[15] Much of S.B.'s argument is a request for us to reweigh the evidence, which we will not do. Based on the record before us, the findings of the trial court, and our deferential standard of review, we cannot say the trial court's determination that S.B. was unfit and it was in A.S.B.'s best interests to dispense with the requirement of his consent to adoption was clearly erroneous.

[16] Affirmed.

May, J., and Mathias, J., concur.

---

[5] We do note, however, that this case is unlike many others in that the rights of both of A.S.B.'s biological parents were terminated but K.E. alone is adopting A.S.B.