562 N.E.2d 745 (1990)
In re the ADOPTION OF Justin Thomas SUBZDA.
Tony Mehl Lower, Appellant (Petitioner below),
v.
Andrew Thomas Subzda, Appellee (Respondent below).
No. 44A03-8912-CV-00568.
Court of Appeals of Indiana, Third District.
November 14, 1990.
*747 Tim J. Cain, LaGrange, for appellant.
Daniel F. Diggins and S. Michele Schaefer, Emerick & Diggins, P.C., Kendallville, for appellee.
STATON, Judge.
Tony Lower (Tony) appeals the denial of his petition for the adoption of Justin Subzda (Justin). Justin's natural father, Andrew Subzda (Andrew) filed an objection to the adoption, and the trial court found in his favor. Tony's appeal presents this court with three issues for review, which we restate as the following two issues:
1. Whether the trial court erred by determining that Andrew's consent to the adoption was necessary in light of Andrew's abandonment of, failure to communicate with, and failure to provide for the support of Justin.
2. Whether the adoption of Justin by Tony would be in Justin's best interests.
Reversed.
On appeal, this court will not disturb the trial judge's decision in an adoption proceeding unless the evidence at trial led to but one conclusion and the trial judge reached an opposite conclusion. In re Adoption of Augustyniak (1987), Ind. App., 505 N.E.2d 868, reh. denied 508 N.E.2d 1307, trans. denied. We will not *748 weigh conflicting evidence or assess the credibility of witnesses. Matter of Adoption of Lockmondy (1976), 168 Ind. App. 563, 343 N.E.2d 793.

I.

Whether Andrew's Consent is Required
Tony contends that Andrew's consent to Justin's adoption was not required because Andrew either abandoned Justin, failed to communicate significantly with the child, or knowingly failed to provide for Justin's care and support. The statute obviating the requirement of consent to an adoption petition provides in pertinent part:
(g) Consent to adoption is not required of:
(1) a parent or parents if the child is adjudged to have been abandoned or deserted for six (6) months or more immediately preceding the date of the filing of the petition; or a parent of a child in the custody of another person, if for a period of at least one (1) year he fails without justifiable cause to communicate significantly with the child when able to do so or knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree (when the parent or parents have made only token efforts to support or to communicate with the child, the court may declare the child abandoned by the parent or parents)[.]
Ind. Code 31-3-1-6 (Burns Repl.Vol. 1987).
As this statute is in derogation of the common law, it must be strictly followed in all essential particulars. Emmons v. Dinelli (1956), 235 Ind. 249, 133 N.E.2d 56; Johnson v. Cupp (1971), 149 Ind. App. 611, 274 N.E.2d 411. Furthermore, in order for an adoption to take place without parental consent, the statutory exceptions for abandonment, failure to communicate with or support the child must be shown by clear, cogent, and indubitable evidence. Graham v. Starr (1981), Ind. App., 415 N.E.2d 772; In re Bryant's Adoption (1963), 134 Ind. App. 480, 189 N.E.2d 593.

A. Abandonment

Tony first alleges that Andrew abandoned or deserted Justin six (6) months or more immediately prior to the filing date of the adoption petition. For this reason, Tony concludes that Andrew's consent for Justin's adoption is not required. The adoption petition was filed on January 18, 1989.
"Abandonment" is defined as "any conduct by the parent which evinces an intent or settled purpose to forgo all parental duties and to relinquish all parental claims to the child." In re Adoption of Childers (1982), Ind. App., 441 N.E.2d 976, 979. The determination of the ultimate fact of abandonment should receive a liberal construction so that children who have been denied the benefits of home and parental care may receive those benefits, but not such an interpretation as would destroy the safeguards for the preservation of family relationships. Matter of Adoption of Thomas (1982), Ind. App., 431 N.E.2d 506, reh. denied, trans. denied.
Looking at the evidence most favorable to the determination below, it appears that in the six-month period immediately preceding the filing date of the adoption petition, the extent of Andrew's conduct with regard to his parental duties was minimal. Andrew scheduled a visit with Justin for the first week of August, 1988, but acknowledged that he made no meaningful effort to engage Justin in any kind of activity or conversation during that visit. Andrew spent nearly all of this visitation talking with his ex-wife, Debra Lower (Debra).
On the other hand, Andrew's offers to consent to the adoption as exhibited by his letters to Debra, as well as his testimony at the hearing on the petition, indicate that he was concerned about Justin's future. In fact, it was this concern that led Andrew to believe that it was in Justin's best interests to, as he put it, "surrender my rights as legal father of Justin... ." Although Andrew's letters were sent prior to the six-month statutory period, and may not be considered with respect to the abandonment allegation, the trial court could have properly inferred from Andrew's testimony *749 that he no longer wished to relinquish those rights in the period immediately prior to the filing of the petition.
Tony asserts that Andrew's non-communication during the six months preceding the date of the petition for adoption amounted to an abandonment, implying that Justin was "bereft of home and parental care" during that time. See Emmons, supra, 235 Ind. at 264-65, 133 N.E.2d at 63. However, the evidence is uncontradicted that Justin was receiving the parental care of his mother, Debra, and was enjoying the comforts of the home provided for him by Debra and Tony. Mere acquiescence in a child's custody with another parent cannot be construed as an implied relinquishment of the claim to the child. Thomas, supra, at 513.
We cannot say as a matter of law that Tony met his burden of proving by clear, cogent, and indubitable evidence that Andrew abandoned Justin in the six months prior to the date the adoption petition was filed. Therefore, the trial court did not err with respect to this issue.

B. Failure to Communicate

Tony also alleges that Andrew failed without justifiable cause to communicate significantly with Justin when he was able to do so. See Augustyniak, supra, at 871. Whether the petitioner has met the burden of proof on this statutory exception to the consent requirement depends on the facts and circumstances of each case. Thomas, supra, at 517.
The uncontroverted evidence reveals that Andrew and Debra were divorced in May of 1986. Andrew visited with Justin twice that year, in June and August. During those visits, Andrew had no meaningful contact with Justin, spending one entire two-hour visit conversing with Debra. Debra first notified Andrew of her request for his consent to the adoption in August of 1986. Andrew sent Justin a Christmas present in 1986, but following that made no contact whatsoever with Justin until August of 1988.
Andrew asserts that it was impossible for him to see Justin on a regular basis because of the distance between his new home in Indianapolis and Justin's home in Northern Indiana, and due to his lack of transportation during part of that period. He contends that this constitutes the justifiable cause excusing his failure to communicate with Justin. A similar argument was rejected in Rosell v. Dausman (1978), 175 Ind. App. 618, 373 N.E.2d 185, where the parent objecting to the adoption testified that she had trouble picking up the children, but also acknowledged that she was not prevented from making telephone calls, sending birthday cards or Christmas cards. The parent in Rosell exhibited only "complete silence." Id. at 620, 373 N.E.2d at 187. Furthermore, the statute does not contemplate "regular" communication. One significant communication in a year would have been sufficient.[1]
So it is in the present case. For a period of two years, one more than the statutory minimum, Andrew was completely silent with respect to Justin. The evidence indicates that he had Debra's phone number and address during that time but not once attempted to call Justin or mail him a birthday or Christmas card. He also had access to transportation during that period, but never made the trip to see Justin.
The trial judge found that Andrew's failure to communicate with Justin during that time was partly attributed to Andrew's initial decision to give his consent to the adoption. Whatever his motivation, this does not rise to the level of justifiable cause excusing his failure make even one attempt at communication in a two year period. Furthermore, the trial judge expressly found that: "For the rest of [1986] and through 1987 [Andrew] was unable to reach a decision on the request to consent to adoption but also did not pay support *750 or see or communicate with his son." (Emphasis supplied).
Andrew underscores the fact that he satisfied his outstanding child support obligations, totalling $2,840.00, on January 11, 1989. However, Andrew became current on his child support payments in response to a contempt petition filed by Debra. The trial judge's conclusion that Andrew's payment of his child support obligations demonstrated an interest in preserving the familial relationship is contrary to the evidence and against the judge's own findings of fact.[2]
Finally, Andrew supports his claim with the contention that Debra thwarted his attempts to communicate with his son. He is correct in his assertion that efforts of a custodial parent to hamper the communication between parent and child are relevant in determining the ability to communicate. Augustyniak, supra, at 871. The record, however, indicates that Andrew could not remember whether he requested visitation in his calls to Debra in the late summer of 1988. As the trial court found, Andrew made no attempt to call, write, or visit the entire year of 1987.
The evidence in this case leads to but one conclusion: Tony has shown by clear, cogent, and indubitable evidence that Andrew failed to significantly communicate with Justin without justifiable cause for a period greater than one year when Andrew was able to do so, and accordingly, Andrew's consent is not required for the adoption proceeding to continue.[3]
Because this court reverses on the issue of failure to communicate, we decline to address whether Andrew knowingly failed to provide for Justin's care and support as required by law.

II. Justin's Best Interests

Lastly, Tony asks this court to determine whether the adoption would be in Justin's best interests. Once the need for parental consent is vitiated by fulfillment of the statutory exceptions of IC 31-3-1-6(g)(1), a court may properly consider the best interests of the child. Rosell, supra, 175 Ind. App. at 622, 373 N.E.2d at 188; Graham, supra, at 774. However, the responsibility for making the determination as to whether adoption is in the best interests of the child rests solely with the trial court, under the authority of IC 31-3-1-8(a). Childers, supra, at 980.
Reversed and remanded for proceedings consistent with this opinion.
ROBERTSON, J., concurs.
GARRARD, J., dissents with separate opinion.
GARRARD, Judge, dissenting.
I agree with the majority that abandonment was not established but dissent from the decision to reverse on the ground that under the evidence the court was required to find that the natural father had failed without justifiable cause to communicate significantly with his child when he was able to do so.
Initially, it is relevant to note that the little boy was born May 27, 1985. Thus, he was only about a year old at the time of the 1986 visits and was less than four when the adoption petition was filed. Significant communication must be assessed from that perspective.
The findings entered by the trial court are supported by the evidence. They paint a somewhat different picture than those relied on by the majority.
*751 The parties were divorced in May 1986 and the wife remarried. In August 1986 she asked that her new husband be permitted to adopt the child. For the rest of that year and through 1987 the father was unable to reach a decision on that request, but in February 1988, he decided that adoption might be best for his son. He wrote the mother indicating he would consent, but the mother and stepfather did not respond. In May 1988, he again wrote requesting that they proceed and again there was no response. In August he then contacted the mother, arranged for visitation with his son and attempted to resume a relationship.
The court listened to the witnesses and concluded that this father's motivations were primarily concerned with the effort to determine where the best interests of his son lay.
It is not our role to determine that a father's actions so undertaken cannot constitute justifiable cause even though some may have been ill considered in light of subsequent events. It does not boggle this judge's mind to conjecture the soulsearching involved in such a process and the belief that if adoption was the best answer, then perhaps the less contact the father had, the better off the child would be.
I would affirm the trial court.
NOTES
[1] This would assume that the single communication does not represent a "token effort" to contact the child. IC 31-3-1-6(g)(1). Additionally, the consent provision allows the court to declare a child abandoned if a parent makes only token efforts to support or to communicate with the child. See, e.g., Matter of Adoption of Marcum (1982), Ind. App., 436 N.E.2d 102.
[2] Finding of Fact, No. 5, reads:

5. In response to a contempt petition in the Noble Circuit Court concerning child support, Respondent paid his child support obligation for the support of his son current to the date of January 11, 1989.
Furthermore, the payment or nonpayment of support is a separate basis for the termination of parental rights under IC 31-3-1-6(g)(1), and is irrelevant to the issue of communication. Matter of Adoption of Ryan L. (1982), Ind. App., 435 N.E.2d 624, 626.
[3] There is no language in the statute that suggests the one year period must occur immediately prior to the filing of the adoption petition as is the case with abandonment. Rosell, supra, 175 Ind. App. at 620, 373 N.E.2d at 187 n. 4. In addition, the parents' conduct after the filing of the petition is wholly irrelevant to the determination of whether the parent failed to significantly communicate with the child for any one year period.