**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**KENDRA G. GJERDINGEN**
Mallor Grodner LLP
Bloomington, Indiana

ATTORNEYS FOR APPELLEE:

**DARRYN L. DUCHON**
Indianapolis, Indiana

**MONTY K. WOOLSEY**
Carmel, Indiana

**FILED**
Jun 27 2013, 10:09 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| D.D., | ) |
| | ) |
| Appellant-Petitioner, | ) |
| | ) |
| vs. | )  No. 49A02-1211-DR-896 |
| | ) |
| D.P., | ) |
| | ) |
| Appellee-Respondent, | ) |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Theodore M. Sosin, Judge
Cause No. 49D02-0310-DR-1827
32D01-0911-AD-37

**June 27, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issue

D.D. ("Husband") appeals the trial court's denial of his petition to adopt J.J.P. and J.P. (the "Children"). Husband raises two issues on appeal, one of which we find dispositive: whether the trial court abused its discretion by applying the wrong standard for the burden of proof. Concluding that the trial court applied an incorrect standard, we remand.

## Facts and Procedural History

In 2004, K.D. ("Mother") and D.P. ("Father") were divorced, and Mother was awarded sole legal and physical custody of the Children, who were twenty-three months and four months old at the time. That same year, Father moved to the Washington D.C. area for work. Father had other relatives who remained in Indiana in addition to the Children, including a father and step-mother, and three children from a previous marriage.

In 2007, Mother and Husband were married. In November 2009, Husband petitioned to adopt the Children. The petition was granted following a hearing. However, Father had not been served with proper notice of the petition, and so the adoption decree was vacated and another hearing was scheduled. The adoption petition was subsequently heard and ruled upon by a court that was ruling on Father's parenting time, rather than the court in which the adoption petition was filed. We reviewed an appeal from that decision, and held that it was improper for the court to sua sponte assume jurisdiction over a case pending in another trial court, and we consequently vacated the findings and conclusions related to the adoption proceedings. Devlin v. Peyton, 946 N.E.2d 605, 607 (Ind. Ct. App. 2011).

2

In September 2012, the trial court held a hearing on the issue of whether Father's consent was required. In October 2012, the court entered findings of fact and conclusions of law and determined that Father's consent was required. Because Father had not consented, the court vacated the hearing set to determine the best interests of the children, and denied Husband's petition for adoption. This appeal followed. Additional facts will be supplied as necessary.

## Discussion and Decision

### I. Standard of Review

We will not disturb the trial court's decision in an adoption proceeding unless the evidence leads only to a conclusion opposite that reached by the trial court. In re Adoption of M.A.S., 815 N.E.2d 216, 218 (Ind. Ct. App. 2004). We will not reweigh the evidence. Rather, we will examine the evidence most favorable to the trial court's decision, together with reasonable inferences drawn therefrom, to determine whether sufficient evidence exists to sustain the decision. Id. at 218-19.

### II. Consent to Adoption

There are several grounds for concluding that consent to adoption is not required. See Ind. Code § 31-19-9-8. Husband argued that Father's consent was not necessary because Father had failed to significantly communicate with the Children for a period of at least one year, when able to do so. Ind. Code § 31-19-9-8(a)(2)(A). When alleging that a parent's consent is not required for an adoption, the petitioner has the burden to prove that the statutory ground has been met. In re Adoption of M.A.S., 815 N.E.2d at 220. Here, the trial

court applied a burden of proof standard of "clear, cogent, and indubitable evidence." Appellant's Appendix at 20. Husband argues that this was an inappropriately strict standard, and we agree.

A review of the case law indicates that older cases did apply this standard, and that, as the trial court noted, "indubitable" evidence requires proof that is unquestionable. See, e.g., In re Adoption of Augustyniak, 505 N.E.2d 868, 870 (Ind. Ct. App. 1987). However, we analyzed this standard in In re Adoption of M.A.S., 815 N.E.2d 216, 219-20 (Ind. Ct. App. 2004). We noted that the indubitable standard as defined created a standard even more stringent than that of the criminal standard of beyond a reasonable doubt, and that such a standard was in conflict with other sections of the adoption statute. Id. at 219. We determined that the appropriate standard is the more customary heightened civil standard of clear and convincing evidence. Id. at 220. Our more recent cases examining the standard hold to this analysis. See, e.g., In re Adoption of S.W., 979 N.E.2d 633, 640 (Ind. Ct. App. 2012). Our supreme court has said of the clear and convincing standard that it is:

> an intermediate standard of proof that: lies between a preponderance of the evidence and beyond a reasonable doubt which is required to find guilty in criminal prosecutions. The burden of proof by clear and convincing evidence is not a burden of convincing you that the facts which are asserted are certainly true or that they are almost certainly true or are true beyond a reasonable doubt. It is, however, greater than a burden of convincing you that the facts are more probably true than not true. The clear and convincing standard is employed in cases where the wisdom of experience has demonstrated the need for greater certainty, and where this high standard is required to sustain claims which have serious social consequences or harsh or far reaching effects on individuals to prove willful, wrongful and unlawful acts to justify an exceptional judicial remedy.

In re G.Y., 904 N.E.2d 1257, 1260 n.1 (Ind. 2009) (internal citations and quotations omitted).

4

We remand to the trial court to reconsider whether Husband has met his burden of proof in light of the correct standard of clear and convincing evidence.[1] We also take this opportunity to clarify some other aspects of parental consent that may have been misunderstood.

To begin with, we remind the trial court that the relevant time period is <u>any</u> one year period, before the filing of the petition for adoption, in which the Children were in the custody of another person and Father failed "without justifiable cause to communicate significantly with the child when able to do so." Ind. Code § 31-19-9-8(a)(2)(A); <u>In re Adoption of Subzda</u>, 562 N.E.2d 745, 750 n.3 (Ind. Ct. App. 1990) ("There is no language in the statute that suggests the one year period must occur immediately prior to the filing of the adoption petition as is the case with abandonment. In addition, the parents' conduct after the filing of the petition is wholly irrelevant to the determination of whether the parent failed to significantly communicate with the child for any one year period." (internal citations omitted)); <u>see also</u> <u>In re Adoption of J.T.A.</u>, No. 37A03-1212-AD-525, slip op. at 8-9 (Ind. Ct. App., June 10, 2013) (examining case law and the language of the statute and determining that, regarding Indiana Code section 31-19-9-8(a)(2)(B)—the failure to support ground—the relevant time period is not limited to the year preceding the adoption petition, but is any one year period in which the parent had an obligation and failed to meet it). Therefore, if there is any one year period, prior to the filing of the adoption petition, in which Father was able to

---

[1] A new hearing is not necessary.

We also note that the record here is silent as to whether Father timely contested the adoption; failure to do so, assuming proper notice, would cause his consent to be implied. <u>See</u> Ind. Code § 31-19-9-18.

communicate with the Children and failed to do so without justifiable cause, then his consent is not required for the Children's adoption.[2]

As for Father's ability to communicate, any efforts on Mother's part to hamper or thwart communication between Father and the Children are relevant in determining his ability to communicate. Rust v. Lawson, 714 N.E.2d 769, 772 (Ind. Ct. App. 1999), trans. denied. However, speculation that attempts to communicate would have been thwarted is insufficient. See In re Adoption of T.W., 859 N.E.2d 1215, 1218 (Ind. Ct. App. 2006).[3] And as for the quality of any communication that took place, such communication must be more than token efforts to communicate with the Children. Rust, 714 N.E.2d at 772. The reasonable intent of the statute is to encourage non-custodial parents to maintain communication with their children and to discourage non-custodial parents from visiting their children just often enough to thwart the adoptive parents' efforts to provide a settled environment for the children. Id.

---

[2] We note that the record here shows that Father initiated communication with the Children around the time of the petition for adoption, and seems to have continued that communication under the divorce decree while the adoption proceedings were pending. While this communication may be relevant to the best interests of the children inquiry that is the final prong in an adoption proceeding, it is not relevant to the issue of whether Father's consent is required. See In re Adoption of N.W., 933 N.E.2d 909, 914 (Ind. Ct. App. 2010), opinion adopted, 941 N.E.2d 1042 (Ind. 2011) ("A petition for adoption is not automatically granted following a showing that a natural [parent's consent is not required]. Once the statutory requirements are met, the court may then look to the arrangement which will be in the best interest of the child.").

[3] The record indicates that Father never attempted to communicate with the Children prior to 2009; at the hearing he testified that he believed Mother would have thwarted any attempts, and that if Mother had asked him to call the Children or send them cards, he would have, but he admitted that he never made any such attempts on his own. The record indicates that Father's financial situation shortly after the divorce may have precluded him from traveling to visit the Children or sending gifts or perhaps even cards. However, he also testified at the hearing that he had maintained contact with his other children from a previous marriage, via calls, text messages, cards, gifts, and, at least in later years, by flying them out to visit him—indicating that there were years in which he had the ability to communicate with his children in Indiana. We leave a finding regarding Father's ability to communicate with the Children in the trial court's hands.

6

Also regarding communication, the trial court found that Father had indirect communication with the Children via his relatives, and the court also found that the Children had a bond with some of Father's relatives. Any bond that the Children had with other relatives might be relevant to the best interests of the children inquiry, but is not relevant to Father's communication. We also disagree that interactions with family members inherently evince indirect communication with a parent. While we can certainly envision situations in which a parent's attempts to communicate with a child are thwarted, and the parent turns to family members to pass messages and gifts and the like to the child, and thus does have actual indirect communication with the child, that is not the situation at hand. The trial court cited In re Adoption of Thomas, 431 N.E.2d 506, 515 (Ind. Ct. App. 1982), for the proposition that contact with family members constitutes indirect communication by a parent. The facts provided for that case are somewhat thin, but they seem to focus on the grandmother's visits with the children, and do not delve into how the father may have indirectly communicated during those visits. To the extent that case holds that any contact by a relative inherently constitutes indirect contact by a parent, we disagree. There must be some involvement by the parent for communication to take place. Here, the record shows that Father was not involved in arranging any of the visits between his parents and the Children, and only heard about the visits after the fact; there is no indication that there was any communication between him the Children through or because of those visits.

Finally, while the trial court's findings of fact and conclusions of law touched on support and abandonment, as well as communication, we observe that the statute is written in

7

the disjunctive, and thus each of the sub-sections provides an independent ground for dispensing with consent. In re Adoption of T.W., 859 N.E.2d 1215 at 1218. While a possible failure on Father's part to support the Children and any possible abandonment of them are both reasonable avenues of inquiry for the trial court, and, if found, could each potentially lead to a determination that Father's consent was not required in the Children's adoption, findings that Father did support or did not abandon the Children have no bearing on the issue of Father's communication with the Children. These issues may well have been separated in the mind of the trial court, but appeared sufficiently entangled in the findings of fact and conclusions of law that we take this opportunity to clarify the law.

### Conclusion

Concluding that the trial court applied an overly stringent standard to Husband's burden of proof regarding the necessity of Father's consent to the adoption, and that the correct standard is clear and convincing evidence, we remand to the trial court to reconsider the evidence in light of the correct standard and this opinion. We reiterate that even if the court finds that Father's consent for the adoption is not necessary, the court will still need to determine the best interests of the children.

Remanded.

FRIEDLANDER, J., and CRONE, J., concur.