## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

**FILED**

Feb 03 2017, 8:32 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court



| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
| --- | --- |
| Timothy P. Broden | Cynthia Phillips Smith |
| Lafayette, Indiana | Lafayette, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Adoption of B.A.M.:

G.M., Jr.,

*Appellant-Respondent,*

v.

D.E.,

*Appellee-Petitioner*

February 3, 2017

Court of Appeals Case No.
79A02-1608-AD-1840

Appeal from the Tippecanoe Circuit Court

The Honorable Thomas H. Busch, Judge

Trial Court Cause No.
79C01-1412-AD-63

**Vaidik, Chief Judge.**

# Case Summary

[1] G.M., Jr. (Father) appeals the trial court's order granting the petition of D.E. (Stepfather) to adopt Father's daughter with J.E. (Mother). Father argues that Stepfather failed to prove by clear and convincing evidence that his consent to the adoption was not required because for a period of at least one year Father failed without justifiable cause to communicate significantly with his daughter when able to do so. Concluding that Stepfather met this burden, we affirm the trial court.

# Facts and Procedural History

[2] Father and Mother have one child together, B.A.M. (Child), who was born September 15, 2003. Because Father and Mother were not married at the time of Child's birth, Father executed a paternity affidavit at the hospital. Mother and Father lived together until 2005, when Father moved out. Mother sought child support, and a child-support order was entered in August 2005. Mother and Father tried reconciling a couple of times but broke up for good in the spring of 2006.

[3] Father maintained frequent parenting time with Child until 2007, at which point he saw her "[o]nce a month if that." Tr. p. 20. In 2008, Father moved to Tennessee and was in a car wreck; he did not see Child "at all" that year. *Id.* In 2009, Father moved in with his parents in Florida to convalesce; he did not see Child that year either. Father returned to Indiana in 2010 and saw Child

three times that summer. But then Father did not see Child in 2011 or 2012.[1] *Id.* at 23-24. After 2012, Father's only visitation with Child occurred in connection with his parents' annual trips to Indiana during the summer. That is, in July 2013, Father's parents asked to see Child, and she spent eight hours with them. Then, in July 2014, Father's parents again asked to see Child, and she spent six hours with them. The requests in 2013 and 2014 were not from Father, but he was present during the visits.[2]

[4] Through the years, Father occasionally called Mother to check up on Child. He never asked about Child's grades, and since 2011 he has not asked about Child's health. Father sent Child a Christmas gift in 2012 and 2013 and called Child on her birthday, although he did not call her in 2014.

[5] In the meantime, Mother and Stepfather started dating in 2012 and got married in May 2014. Stepfather then filed a petition to adopt Child on December 5, 2014. In February 2016, the trial court held a hearing to determine whether Father's consent to adopt Child was required. The trial court issued findings of fact and conclusions that Father's consent to the adoption was not required because for a period of at least one year he failed without justifiable cause to communicate significantly with Child when able to do so. Appellant's App.

---

[1] Father moved back to Florida from August 2011 to June 2013. Tr. p. 62.

[2] Mother claimed that the visits occurred in July 2012 and July 2013, *see* Tr. p. 53, but the trial court found that they actually occurred in July 2013 and July 2014. In any event, the court found that the dates were "immaterial, as [Father's] contact has not been of a substantial nature, nor instituted by him, but by his parents." Appellant's App. Vol. II p. 14.

Vol. II p. 14. The court then held a best-interests hearing, following which it granted Stepfather's petition to adopt Child. *Id.* at 10-11.

## Discussion and Decision

[6] Father contends that the trial court erred in granting Stepfather's petition to adopt Child. Our standard of review in adoption cases is well established. When reviewing adoption proceedings, we presume that the trial court's decision is correct, and the appellant bears the burden of rebutting this presumption. *In re Adoption of O.R.,* 16 N.E.3d 965, 972-73 (Ind. 2014). We give considerable deference to the trial court's decision in family-law matters, because we recognize that the trial judge is in the best position to judge the facts, determine witness credibility, "get a feel for the family dynamics," and "get a sense of the parents and their relationship with their children." *Id.* at 973. We will not disturb the trial court's ruling unless the evidence leads to but one conclusion and the trial judge reached an opposite conclusion. *Id.*

[7] When, as in this case, the trial court has made findings of fact and conclusions, we apply a two-tiered standard of review: we must first determine whether the evidence supports the findings and second, whether the findings support the judgment. *In re Adoption of T.L.,* 4 N.E.3d 658, 662 (Ind. 2014). Factual findings are clearly erroneous if the record lacks any evidence or reasonable inferences to support them, and a judgment is clearly erroneous when it is unsupported by the findings of fact and the conclusions relying on those findings. *Id.* We neither reweigh the evidence nor assess the credibility of

witnesses, and we examine the evidence most favorable to the trial court's decision. *O.R.,* 16 N.E.3d at 973.

[8] Generally, a petition to adopt a minor child may be granted only if written consent has been provided by the biological parents. *See* Ind. Code § 31-19-9-1. However, written consent is not required from, among others, the following:

> (2) A parent of a child in the custody of another person if for a period of at least one (1) year the parent:

>> (A) fails without justifiable cause to communicate significantly with the child when able to do so . . . .

Ind. Code § 31-19-9-8(a). The petitioner for adoption must prove this statutory criterion by clear and convincing evidence. *See T.L.,* 4 N.E.3d at 662 n.3. Father claims Stepfather failed to meet this burden.[3]

[9] The test for communication is not whether the noncustodial parent had no communication with the child, but whether he failed without justifiable cause to have significant communication when able to do so. *In re Adoption of S.W.,* 979 N.E.2d 633, 640 (Ind. Ct. App. 2012). The purpose of this statutory provision is to foster and maintain communication between noncustodial parents and

---

[3] The trial court also found that for a period of at least one year Father knowingly failed to provide for the care and support of Child when able to do so as required by law or judicial decree. *See* Ind. Code § 31-19-9-8(a)(2)(B). Because "the statute is written in the disjunctive such that the existence of any one of the circumstances provides sufficient ground to dispense with consent," *O.R.,* 16 N.E.3d at 973, we do not address this provision.

their children, not to provide a means for parents to maintain "just enough contact" to thwart potential adoptive parents' efforts to provide a settled environment to the child. *Id.* Accordingly, the noncustodial parent must make more than a "token effort" to communicate with the child. *In re Adoption of C.E.N.,* 847 N.E.2d 267, 272 (Ind. Ct. App. 2006). This is a fact-sensitive determination. *Id.* at 271.

[10] Father concedes that he had a lengthy period of no communication with Child. That is, Father did not see Child in 2008, 2009, 2011, and 2012. Highlighting that he saw Child for several hours in July 2013 and July 2014, Father argues that "it would defy logic" to ignore this "lengthy period of significant communication" with Child that preceded the filing of Stepfather's adoption petition. Appellant's Br. p. 7 (citing *E.W. v. J.W.*, 20 N.E.3d 889, 896 (Ind. Ct. App. 2014), *trans. denied*). We, however, do not believe that Father's one visit with Child in July 2013 (eight hours) and one visit with Child in July 2014 (six hours)—both arranged by his parents—constitutes a lengthy period of significant communication. This is so even considering that Father sent Child a Christmas gift in 2013 (but not in 2014) and called her on her birthday in 2013 (but not in 2014). As the trial court found:

> [Father] only had contact with [Child] when his parents would travel to Indiana to visit relatives. He never initiated any specific plan as to how he would have parenting time with his daughter. The contact he had in this matter is not enough to stave off termination of his parental rights.

Appellant's App. Vol. II p. 15.  Accordingly, we conclude that Stepfather

proved by clear and convincing evidence that for a period of at least one year

Father failed without justifiable cause to communicate significantly with Child

when able to do so.[4]  We therefore affirm the trial court.

Affirmed.

Bradford, J., and Brown, J., concur.

---

[4] Citing *In re Adoption of Subzda*, 562 N.E.2d 745, 749 (Ind. Ct. App. 1990), Father points out that one significant communication (provided that this single communication does not amount to a token effort to contact the child) in a year can be enough to stave off termination of parental rights.  However, we find that Father's one visit in July 2013 and one visit July 2014, both arranged by his parents, are token efforts.