## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 14 2020, 8:15 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Casandra L. Ringlespaugh
Emswiller, Williams, Noland &
Clarke, LLC
Indianapolis, Indiana

ATTORNEY FOR APPELLEES

Charles P. Rice
Murphy Rice, LLP
South Bend, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Adoption of S.M.:

S.D.,

*Appellant-Respondent,*

v.

K.W. and S.W.,

*Appellees-Petitioners*

August 14, 2020

Court of Appeals Case No.
20A-AD-249

Appeal from the Hamilton
Superior Court

The Honorable Michael A. Casati,
Judge

Trial Court Cause No.
29D01-1804-AD-539

**Baker, Senior Judge.**

[1] S.D. (Mother) appeals the trial court's order granting K.W. and S.W.'s (Adoptive Parents) petition to adopt S.M. (Child). Mother argues that the trial court erred by finding that (1) her consent to the adoption was not required, (2) consent of the Department of Child Services (DCS) to the adoption was not required, and (3) granting the adoption petition was in Child's best interests. Finding no error, we affirm.

## Facts

[2] Child was born in February 2016.[1] When Child was four months old, he was found to be a child in need of services (CHINS) because of, among other things, Mother's substance abuse. That CHINS case was still open and ongoing at the time of the adoption proceedings over three years later. The Adoptive Parents are Child's foster parents in the CHINS case, and he has been placed with them since May 2017, when he was removed from Mother's care and custody because of her continuing substance abuse, among other things.

[3] Mother claims that after Child was removed in May 2017, she had some visits with him.[2] The trial court, however, found that testimony to be not credible given her heavy drug use and the absence of any corroborating testimony or evidence. Mother admitted that she was high on methamphetamine during that time. Therefore, the trial court found that even if the visits did occur, they did

---

[1] Child's biological father also filed a motion to contest the adoption, but his motion was dismissed with prejudice and he is not a party to this appeal.

[2] She also testified, however, that she "hadn't seen him" between May and October 2017. Tr. Vol. II p. 167.

not qualify as "sufficient communication" pursuant to the relevant statute. Appealed Order p. 3.

[4] From May 2017 through November 2017, Mother used methamphetamine on a daily basis. In October 2017, Mother was jailed briefly in Warren County for charges of possession of methamphetamine, marijuana, and drug paraphernalia, and operating a vehicle while intoxicated, endangering a person; she later pleaded guilty as charged. In November 2017, Mother was arrested again, this time in Montgomery County, for charges of driving while suspended; possession of methamphetamine, marijuana, and drug paraphernalia; and two counts of possession of a controlled substance. She remained incarcerated for four months and ultimately pleaded guilty to possession of marijuana and two counts of possession of a controlled substance.

[5] After Mother's incarceration in November 2017, the CHINS court suspended Mother's visits because of her drug use, incarceration, and failure to comply with the directives of the CHINS case. Consequently, Mother had no visits with Child while she was incarcerated (from November 2017 to March 2018) or from the time of her release from jail (March 2018) until February 2019.

[6] When Child was first placed with Adoptive Parents in May 2017, he was non-verbal and withdrawn. Since that time, however, he has thrived and is now a confident and adventurous child. He is strongly bonded to Adoptive Parents and their two daughters, who are near Child's age.

On April 17, 2018, Adoptive Parents filed a petition to adopt Child, later amending the petition to allege that the consent of Child's biological parents was not required because they had failed to communicate significantly with or support Child. Mother filed a motion to contest the adoption in February 2019. DCS has never appeared in the adoption proceedings, did not file a motion to contest the adoption, and took a neutral position in the case. DCS did, however, indicate that if the trial court determined that Mother's consent was not required, DCS would agree that remaining with Adoptive Parents would be in Child's best interests.

On December 10, 2019, the trial court held an evidentiary hearing on the adoption petition. On January 6, 2020, the trial court entered an order finding that Mother's consent to the adoption was not required and granting the adoption petition. In pertinent part, the order states as follows:

> 36. There was no reliable evidence of any communication or attempted communication between [Mother] and [Child] from May 18, 2017 through March, 2018, aside from [Mother's] uncorroborated self-serving testimony of having supervised visits (which were undocumented). Even [Mother] did not claim that she called, face-timed or wrote letters to [Child] during the period from May of 2017 through October 2018.

> 37. There was no evidence that [Adoptive Parents] have ever made any efforts to thwart communication by [Mother] with [Child].

***

39. The only person who impeded [Mother's] ability to communicate with [Child] was [Mother] herself by her repeated actions and repeated noncompliance (even after her release from incarceration when she represented that she wanted visitation but continued to be non-compliant) with the directives of DCS and the CHINS court.

40. [Mother] has asserted that her inability to visit with [Child] was due to the rulings in the CHINS Court, and not due to her own election. [Mother] fails to understand and take responsibility for the fact that the rulings in the CHINS Court were due to [Mother's] own actions and decisions.

\* \* \*

53. The best interests of [Child] would be served if the Court dispensed with [Mother's] consent.

\* \* \*

71. [Mother] accepted the time [Child] was placed with the [Adoptive Parents] as a holiday from parental responsibilities. She would like to be excused from parental duties, yet retain the rights and benefits of parenthood. . . .

\* \* \*

73. [Adoptive Parents] have proven by clear and convincing evidence that [Mother] has failed to significantly communicate and failed to support [Child] for a period of at least one year. The evidence establishes that [Mother's] communications with [Child] fall[] short of "significant' and instead amount[] to mere "token efforts." The

evidence also establishes that [Mother] knowingly failed to provide support for [Child] when able to do so when required by law. Accordingly . . . , [Mother's] consent is not required.

74.     [Adoptive Parents] have also proven by clear and convincing evidence that granting the adoption is in [Child's] best interest.

75.     The Court dispenses with DCS's written consent to the Adoption as it is clear (1) that DCS does not contest the adoption and (2) in light of DCS's position that, in the event that the consent of [Mother] was not required, then DCS would agree that the adoption was in the best interests of [Child], then the Court concludes that, pursuant to IC 31-19-9-8(a)(10) DCS has failed to consent to the adoption for reasons found by the court not to be in the best interests of the child.

Appealed Order p. 6-12. Mother now appeals.

# Discussion and Decision

Mother makes the following arguments on appeal: (1) the trial court erred by finding that Adoptive Parents proved by clear and convincing evidence that her consent was not required because she had failed without justifiable cause to communicate with Child when able to do so for at least one year; (2) the trial

court erred by dispensing with DCS's consent; and (3) the trial court erred by finding that adoption is in Child's best interests. [3]

[10] Our standard of review in adoption proceedings is well established:

> In family law matters, we generally give considerable deference to the trial court's decision because we recognize that the trial judge is in the best position to judge the facts, determine witness credibility, "get a feel for the family dynamics," and "get a sense of the parents and their relationship with their children." *MacLafferty v. MacLafferty*, 829 N.E.2d 938, 940 (Ind. 2005). Accordingly, when reviewing an adoption case, we presume that the trial court's decision is correct, and the appellant bears the burden of rebutting this presumption. *In re Adoption of O.R.*, 16 N.E.3d 965, 972-73 (Ind. 2014).

> The trial court's findings and judgment will be set aside only if they are clearly erroneous. *In re Paternity of K.I.*, 903 N.E.2d 453, 457 (Ind. 2009). "A judgment is clearly erroneous when there is no evidence supporting the findings or the findings fail to support the judgment." *Id.* We will not reweigh evidence or assess the credibility of witnesses. *In re Adoption of O.R.*, 16 N.E.3d at 973. Rather, we examine the evidence in the light most favorable to the trial court's decision. *Id.*

---

[3] Mother also argues that the trial court erred by admitting Exhibit 5 into evidence, which is DCS's case file on Child's CHINS case. We find that even if there was error with respect to this exhibit, the error was harmless because the relevant evidence in the file is cumulative of other evidence in the record. Specifically, the transcript is replete with evidence of Mother's drug use (including her own admissions of the same) and noncompliance with the CHINS case directives. Furthermore, Mother makes no argument that the admission of Exhibit 5 in any way affected her substantial rights. *See Sibbing v. Cave*, 922 N.E.2d 594, 598 (Ind. 2010) (holding that any errors in the admission of evidence are harmless "unless they affect the substantial rights of a party") (internal quotation marks removed). We see no evidence that the trial court relied in significant part on this exhibit, nor did we in reaching our decision herein. Consequently, we decline to reverse on this basis.

*In re Adoption of E.B.F.*, 93 N.E.3d 759, 762 (Ind. 2018).

# I.  Mother's Consent

As a general matter, an adoption petition may only be granted if (among other things) written consent to the adoption has been executed by the child's mother and each agency having lawful custody of the child.  Ind. Code § 31-19-9-1(a).  There are exceptions to the consent requirement, however.  Relevant to this case is a provision stating that consent to adoption is not required from a parent of a child in the custody of another person if, "for a period of at least one (1) year the parent: (A) fails without justifiable cause to communicate significantly with the child when able to do so[.]"  I.C. § 31-19-9-8(a)(2)(A).  Additionally, consent is not required from a legal guardian or lawful custodian (such as DCS) "who has failed to consent to the adoption for reasons found by the court not to be in the best interests of the child."  *Id.* at -8(a)(10).

First, the trial court found that Mother had failed, without justifiable cause, to communicate significantly with Child when able to do so for a period of at least one year.  "[T]he purpose of this statutory provision is to 'foster and maintain communication between non-custodial parents and their children, not to provide a means for parents to maintain just enough contact to thwart potential adoptive parents' efforts to provide a settled environment to the child.'"  *In re Adoption of S.W.*, 979 N.E.2d 633, 640 (Ind. Ct. App. 2012) (quoting *In re Adoption of J.P.*, 713 N.E.2d 873, 876 (Ind. Ct. App. 1999)).

[13]     There is some dispute about the period between May and November 2017. Mother claims that she had some visits with Child during those months (though she also testified that she did not see him during that time). But there is no credible corroborating evidence of these claims—which is especially telling given that Mother's visits were supervised—and the trial court found her testimony regarding these visits to be not credible. We will not second-guess the trial court in this regard.

[14]     In any event, the evidence in the record unquestionably shows that Mother had no visits with Child from November 2017 through early 2019—a period totaling approximately fifteen months. Tr. Vol. II p. 35 (Family Case Manager testifying that from November 2017 through some point in 2019 there was no visitation), 66-67 (Mother testifying that she had no visits with Child while she was incarcerated beginning in November 2017), 145 (Mother testifying that she did not start visiting with Child again after her release from incarceration until February 2019). Moreover, there is no evidence in the record that Mother had any other significant communication with Child during this period of time (such as phone calls, video calls, or cards or letters). This evidence establishes that Mother failed to communicate with child for at least one year.

[15]     Mother argues, however, that she was not able to communicate with Child during that time because the CHINS court had suspended her visits. As the trial court noted, however, it was Mother's own choices and behavior that caused her visits to be suspended. Specifically, her visits were suspended "because of her drug use, subsequent incarceration and subsequent repeated

failures to comply with the directives of DCS and the CHINS court." Appealed Order p. 4. As the trial court observed, "[t]he only person who impeded [Mother's] ability to communicate with [Child] was [Mother] herself[.]" *Id.* at 7.

[16] Therefore, although strictly speaking, Mother was not able to visit[4] with Child while her visits were suspended, it was her own choices and behavior that led to that suspension. In other words, she was in control. Had she made different choices, she would have been able to continue to visit with Child. Therefore, we find that the trial court did not err by finding that Mother failed to communicate significantly with Child when able to do so for at least one year.[5]

[17] As to whether Mother had justifiable cause for the lack of communication, she directs our attention to *E.B.F.*, 93 N.E.3d 759. The trial court found *E.B.F.* to be distinguishable from this case, and we agree. In *E.B.F.*, the child's mother was struggling with a serious substance abuse disorder. "Hoping to spare her son the impact of her unfortunate circumstances," she voluntarily relinquished primary physical custody. *Id.* at 760. She retained legal custody with some parenting time, but during a period of more than one year, she failed to

---

[4] While Mother's visits were suspended, nothing in the CHINS Court's order prevented her from *communicating* with Child. Notwithstanding that ability, there is no evidence in the record that Mother, in fact, had any significant communication with Child for at least fifteen months.

[5] Mother's arguments to the contrary, including her assertion that DCS thwarted her ability to communicate with Child, amount to requests that we reweigh evidence and re-assess witness credibility, which we may not and will not do.

communicate significantly with her son. After the child's stepmother's petition to adopt was granted without the mother's consent, she appealed. Our Supreme Court reversed, finding, among other things, that the mother's "willingness to shield her son from the adverse effects of her addiction, coupled with her good-faith attempt at recovery and noticeable progress, constitute justifiable cause for her failure to communicate." *Id.* at 763.

[18] The *E.B.F.* Court examined the totality of the circumstances in that case in considering the justifiable cause question. It emphasized "that Mother chose to relinquish custody on her own free will, in good-faith, and without representation of counsel." *Id.* at 765. Moreover, it noted the evidence in the case "that Mother made a good-faith effort at recovery during the period that she failed to communicate with Child," including participating in drug treatment, ending an abusive relationship, and obtaining stable employment and housing. *Id.* Additionally, our Supreme Court observed that the child's father and stepmother thwarted the mother's ability to communicate with her son. In the end, our Supreme Court was convinced that the mother's consent should be required because "[s]he maintained primary custody of her child for nearly all of his life—ten years—when she realized that her life had taken a turn for the worst and recognized that continued custody would be detrimental to the child's well-being. . . . She made a tough choice; one that was made voluntarily, with the best interest of the child in mind, and with no intent to abandon Child." *Id.* at 767.

In the case before us, in contrast, Mother did not make the "tough choice" to extricate herself from Child's life while she worked on her problems. Instead, DCS, the CHINS Court, and the criminal justice system made that choice for her. It may well be that Mother began to make progress on her substance abuse issues in the months leading up to the adoption hearing, but for much of the CHINS case, she continued to use drugs and commit drug-related crimes, ending up incarcerated for months and having her visits suspended as a result. Therefore, under the totality of circumstances presented in this case—as opposed to those presented in *E.B.F.*—we find that Mother did not have justifiable cause for the lack of communication with Child. Consequently, the trial court did not err by finding that Mother's consent to the adoption was not required.[6]

## II. DCS's Consent

Next, we turn to the trial court's decision to dispense with DCS's consent to the adoption. As noted above, because DCS had wardship of Child at the time of the adoption proceeding, its consent to the adoption was required unless its failure to consent to the adoption is "found by the court not to be in the best

---

[6] The elements of the statute related to lack of communication and lack of support are phrased in the disjunctive, meaning that the petitioners need to meet their burden under only one. Because we have found that the trial court did not err by concluding that the Adoptive Parents proved by clear and convincing evidence that Mother failed to communicate significantly with Child when able to do so, without justifiable cause, for at least one year, we need not and will not consider the trial court's conclusion that Mother also failed to provide for the care and support of Child for at least one year.

interests of the child." I.C. § 31-19-9-8(a)(10). Here, the trial court made such a finding.

[21] DCS was aware of the ongoing adoption proceedings and did not file a motion to contest the adoption. It indicated at the adoption hearing that it was "staying neutral" with respect to the adoption petition. Tr. Vol. II p. 57-58. The Family Case Manager explained that while DCS was remaining neutral, if the trial court were to dispense with Mother's consent and consider Child's best interests, "I don't believe [DCS has] any objection to [Child] staying where he's at and continuing living where he's living." *Id.* at 58.

[22] Under these admittedly opaque circumstances—where DCS did not consent, but also did not object, to the adoption and believed that it was in Child's best interest to remain with the Adoptive Parents—we find that the trial court did not err by dispensing with the requirement that DCS consent to the adoption. If DCS believed that it was in Child's best interest to remain with Adoptive Parents, the trial court reasonably concluded that DCS's failure to consent to the adoption was not in Child's best interests. Therefore, we decline to reverse on this basis.

## III. Best Interests

[23] Finally, Mother argues that the trial court erred by finding that granting the adoption petition is in Child's best interests. The purpose of Indiana's adoptions statutes "is to protect and promote the welfare of children by providing them with stable family units," and a court's "main concern should

lie with the effect of the adoption on the reality of the minor child's life." *In re Adoption of K.F.*, 935 N.E.2d 282, 289 (Ind. Ct. App. 2010). Furthermore, the responsibility to determine whether adoption is in the best interests of the child rests solely with the trial court. *In re Adoption of Subzda*, 562 N.E.2d 745, 750 (Ind. Ct. App. 1990).

[24] At the young age of four months, Child was found to be a CHINS because (in relevant part) of Mother's substance abuse. While he remained in her care and custody for a brief period, he was ultimately removed because of continuing substance abuse concerns, and he has not been returned to her care for over three years. Child is now over four years old and has been in the continuous care of Adoptive Parents for over three years. When he was first placed with Adoptive Parents, Child was non-verbal and withdrawn. Since that time, he has thrived, and is now a confident and adventurous child. Child is strongly bonded to Adoptive Parents, whom he calls mommy and daddy, and to their daughters, whom he calls his sisters.

[25] The trial court gave "great weight" to the opinions of the DCS family case manager and court appointed special advocate, both of whom opined that the adoption is in Child's best interests; the trial court explicitly found both witnesses to be "very credible." Appealed Order p. 9. The trial court also gave weight to the testimony of the Adoptive Parents, who testified that they have provided, and will continue to provide, Child with a stable and loving home. Finally, the trial court concluded that Mother had neglected her parental obligations: "[Mother] accepted the time [Child] was placed with the [Adoptive

Parents] as a holiday from parental responsibilities. She would like to be excused from parental duties, yet retain the rights and benefits of parenthood." *Id.* at 11.

[26] Given the trial court's responsibility to weigh evidence and assess witness credibility, which we may not curtail, we see nothing in this record indicating that the trial court erred in finding that granting the adoption petition is in Child's best interests.

[27] The judgment of the trial court is affirmed.

Bailey, J., and Vaidik, J., concur.