# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**JULIANNE L. FOX**
Fox & Lutz, LLC
Evansville, Indiana

ATTORNEY FOR APPELLEE:

**GLENN A GRAMPP**
Evansville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| E. W., | ) | |
| | ) | |
| Appellant/Plaintiff-Petitioner, | ) | |
| | ) | |
| O. W., | ) | |
| | ) | |
| Co-Appellant/Plaintiff-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 82A04-1401-AD-40 |
| | ) | |
| J. W., | ) | |
| | ) | |
| Appellee-Respondent, | ) | |

APPEAL FROM THE VANDERBURGH SUPERIOR COURT
The Honorable Brett Niemeier, Judge
Cause No. 82D01-0803-JP-91
Cause No. 82D07-1211-AD-166
Cause No. 82D03-1210-PO-5227

**November 17, 2014**

**OPINION - FOR PUBLICATION**

**ROBB, Judge**

## Case Summary and Issues

The appellants in this matter, E.W. ("Father") and O.W. ("Grandmother") (collectively, "Appellants"), appeal from the trial court's orders in favor of J.W. ("Mother") in three consolidated causes, two of which concern Father and Mother's child, R.W. The trial court issued separate orders denying Grandmother's petition to adopt R.W., denying Father's petition to terminate Mother's parenting time, and denying Father's petition for a permanent protection order against Mother. Appellants raise three issues for our review: (1) whether the trial court's denial of Grandmother's petition for adoption is clearly erroneous; (2) whether the trial court abused its discretion by denying Father's request to terminate Mother's parenting time; and (3) whether the trial court erred by denying Father's petition for a protection order against Mother. We conclude the trial court's decisions regarding the petition for adoption and request to terminate parenting time were not erroneous, and we affirm those decisions in all respects. However, we conclude the trial court's order relating to Father's petition for a protection order did not comply with Indiana Trial Rule 52(A), and we remand for further proceedings on that issue. Accordingly, we affirm in part and remand.

## Facts and Procedural History

Mother and Father share one child together: R.W. On May 12, 2010, due to Mother's issues with drug abuse and her relationship with an abusive spouse, Father was granted primary physical custody of R.W. Mother's visitation was restricted to a single three-hour visit per week at the Parenting Time Center at Mother's expense. The trial

court ordered that Mother's child support obligation was limited to one-half of any medical, pharmaceutical, and dental expenses.

On November 4, 2011, Mother filed a motion to modify custody and a request for additional parenting time. A hearing was held on that motion at which Mother testified that she was no longer abusing illegal drugs, and the trial court ordered Mother to submit to a drug test. Mother did not appear for the drug test, and the trial court presumed Mother's nonattendance meant that she would have tested positive. On April 24, 2012, the trial court issued an order denying Mother's request for additional parenting time. Rather than terminate Mother's parenting time, the trial court ordered that Mother would continue to have three-hour visitations on a weekly basis to be supervised by the maternal grandmother. Additionally, the trial court ordered that "[n]either Mother nor [maternal] grandmother may bring [R.W.] gifts unless it is the child's birthday, Christmas, or other holiday." Appellant's Appendix at 83-84. Finally, the trial court's order noted that "[i]f Father has a reasonable suspicion that Mother is under the influence of drugs, Father may request Mother submit to a hair follicle test and/or urinalysis test at her expense up to three times per year." Id. at 84.

Mother continued with her visitation, as ordered, until September 2012, when Father requested that Mother submit to a hair follicle test. Mother did not comply with Father's request, and Father unilaterally discontinued Mother's visitation and refused to allow any communication between Mother and R.W. Thereafter, a number of motions and petitions from Mother, Father, and Grandmother were filed in relatively short succession.

3

On October 11, 2012, Father filed a motion to terminate Mother's parenting time. On October 22, 2012, Father filed for and received an ex parte protection order against Mother. On November 5, 2012, Grandmother filed her petition to adopt R.W., to which Father gave consent conditioned on the retention of his parental rights. Also on November 5, 2012, Mother filed a request to hold Father in contempt for violation of the trial court's order regarding Mother's visitation. All of the above were consolidated into the present cause. A hearing on these matters was held over the course of three days in September 2013.

After Father obtained primary custody of R.W. in May 2010, Mother continued to struggle with drug abuse and with involvement in abusive relationships. Mother had some issues with methamphetamine use and was a habitual marijuana smoker. Most recently, Mother was arrested in March 2013 for driving while intoxicated. However, in the six months preceding the September 2013 hearings, Mother was no longer in an abusive relationship and was drug free.

At the time of the September 2013 hearing, Father had not allowed Mother to see or communicate with R.W. for an entire year. Prior to Father's decision to disallow visitation, Mother had visited six straight weeks prior to September 12, 2012, and Mother made use of a majority of her weekly visitation opportunities going back one year from that date. Mother's visitation with R.W. was largely without incident, and it is clear that R.W. loves Mother. Mother had a number of gifts saved that she had been unable to give to R.W. in the last year.

Sarah Dotson, a caseworker with the Indiana Department of Child Services ("DCS"), testified at the hearing. She explained that she was acquainted with Mother because DCS filed a case alleging that R.W.'s half-sibling, who was in Mother's care, was a child in need of services ("CHINS"). The CHINS proceeding was instituted in March 2013, and Dotson stated that Mother had cooperated with DCS and provided clean drug screens since that time. The child at issue in the CHINS proceeding had been returned to Mother, and the CHINS matter was set to close in November 2013.

On October 15, 2013, the trial court issued three separate orders. The first order denied Grandmother's petition for adoption, concluding Mother's consent was required for adoption. The second order denied Father's motion to terminate Mother's parenting time and denied Mother's request to hold Father in contempt. The third order denied Father's request for a permanent protection order. Father and Grandmother filed motions to correct error as to the issues of adoption, parenting time, and the protection order. The trial court denied those motions to correct error on December 19, 2013. This appeal followed. Additional facts will be supplied as necessary.

## Discussion and Decision

### I. Adoption

Grandmother filed a petition to adopt R.W., which Mother contested. The trial court denied Grandmother's petition, concluding that Mother's consent was necessary. Appellants argue that Mother's consent is unnecessary for three reasons: (1) Mother is unfit to be a parent and the best interests of the child would be served if her consent was not required; (2) Mother has unjustifiably failed to communicate significantly with R.W.

for a period of at least one year; and (3) Mother has failed to provide for the care and support of R.W. for at least one year.

A. Standard of Review and Indiana Law regarding Contested Adoptions

When we review a trial court's ruling in an adoption proceeding, the ruling will not be disturbed unless the evidence leads to only one conclusion and the trial court reached the opposite conclusion. In re Adoption of M.L., 973 N.E.2d 1216, 1222 (Ind. Ct. App. 2012). We do not reweigh evidence, and we consider the evidence most favorable to the decision together with reasonable inferences drawn from that evidence. Id. Further, we "recognize that the trial judge is in the best position to judge the facts, determine witness credibility, get a feel for the family dynamics, and get a sense of the parents and their relationship with their children." Id.

Here, the trial court sua sponte issued findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A). When that occurs, we apply a two-tiered standard of review: (1) we determine whether the evidence supports the findings of fact and (2) whether the findings support the judgment. In re Adoption of A.S., 912 N.E.2d 840, 851 (Ind. Ct. App. 2009), trans. denied. The trial court's findings or judgment will be set aside only if they are clearly erroneous. Id. A finding of fact is clearly erroneous if the record lacks evidence or reasonable inferences from the evidence to support it. Id.

Generally, a petition to adopt a minor child may be granted only if written consent to adopt has been provided by the biological parents. See Ind. Code § 31-19-9-1. However, there are a number of exceptions to the consent requirement. See Ind. Code § 31-19-9-8. Specific to this case, Appellants assert that Mother's consent to adoption of

6

R.W. is unnecessary based on three separate exceptions provided for by law: (1) Mother is unfit to be a parent and the best interests of the child would be served if her consent was not required; (2) Mother has unjustifiably failed to communicate significantly with R.W. for a period of at least one year; and (3) Mother has failed to provide for the care and support of R.W. for at least one year. See Ind. Code § 31-19-9-8(a)(2)(A), (2)(B), and (11). A petitioner for adoption without parental consent has the burden of proving, "by clear and indubitable evidence," one of the statutory criteria allowing for adoption without consent. In re Adoption of J.T.A., 988 N.E.2d 1250, 1252 (Ind. Ct. App. 2013), trans. denied.

## B. Mother's Fitness

First, Appellants contend Mother is unfit to be a parent and that the trial court's order concluding otherwise is clearly erroneous. Indiana law provides that parental consent to adoption is not required from a parent if "(A) a petitioner for adoption proves by clear and convincing evidence that the parent is unfit to be a parent; and (B) the best interests of the child sought to be adopted would be served if the court dispensed with the parent's consent." Ind. Code § 31-19-9-8(a)(11). The term "unfit" is not statutorily defined. But this court has previously defined "unfit" as "[u]nsuitable; not adapted or qualified for a particular use or service" or "[m]orally unqualified; incompetent." In re Adoption of M.L., 973 N.E.2d at 1223 (quoting BLACK'S LAW DICTIONARY 1564 (8th ed. 2004)). We have also noted that statutes concerning the termination of parental rights and adoption "strike a similar balance between the parent's rights and the child's best

7

interests," and thus, termination cases provide guidance in determining whether a parent is "unfit." Id.

Appellants do not challenge any particular finding of fact in the trial court's order. Rather, Appellants argue that Mother's history of drug abuse, relationships with abusive men, and past run-ins with DCS are clear and convincing evidence of Mother's unfitness. Appellants assert that Mother's "short stability length of less than six months is not enough to prove [Mother] fit under the circumstances." Appellant's Brief at 15. Clearly, however, the trial court thought otherwise. In termination of parental rights cases, which we look to for guidance here, the trial court must judge a parent's fitness to care for her children at the time of the termination hearing, taking into account evidence of changed conditions and balancing any recent improvements against any negative actions in the past. See In re E.M., 4 N.E.3d 636, 643 (Ind. 2014). That is precisely what the trial court did in this case. The trial court's order recognized Mother's history of drug abuse and the fact that she has not been a good parent; nevertheless, the trial court weighed Mother's recent stability more heavily and concluded the balance fell against finding Mother unfit.

Appellants refer us to In re Adoption of M.L., supra, and In re Adoption of K.F., 935 N.E.2d 282 (Ind. Ct. App. 2010), trans. denied, in support of their argument that Mother is unfit. There is, no doubt, a parallel to be drawn between those cases and this one; all three involve parents with a history of drug abuse that continued even after a petition for adoption had been filed. However, in In re Adoption of M.L. and In re Adoption of K.F., there was no indication that either of the parents' addiction issues were likely to cease. In In re Adoption of M.L., the court specifically discussed the father's

8

attempts to "minimize[] the seriousness of [his] issues" and noted there was "no indication that [he] intends to quit . . . ." 973 N.E.2d at 1223-24. In this case, however, Mother clearly showed improvement in the six months leading up to the hearing, and the trial court believed Mother was on the right track. Most importantly, the cases that Appellants rely on are both decisions where this court affirmed a trial court's determination that a parent was unfit. Obviously, the standard of review plays a large role in our evaluation of these cases. See id. at 1224 (holding trial court's judgment as to parent's unfitness was not clearly erroneous and rejecting the parent's arguments as a request to "reweigh the evidence"); In re Adoption of K.F., 935 N.E.2d at 289 (same). The fact that trial courts found a history of drug use resulted in the parents' unfitness in In re Adoption of M.L. and In re Adoption of K.F does not mean that the trial court in this case was bound to come to the same decision. Just as the parents in In re Adoption of M.L. and In re Adoption of K.F. made unsuccessful requests for this court to reweigh the evidence, the same can be said for Appellants' argument in this case.

Based on the record before us, the findings of the trial court, and our deferential standard of review, we cannot conclude the trial court's determination as to Mother's fitness was clearly erroneous.

### C. Lack of Significant Communication

Next, Appellants argue Mother's consent is not required for adoption because she did not communicate with R.W. for a period of at least one year. Indiana Code section 31-19-9-8(a)(2)(A) states that consent to adopt is not required by "[a] parent of a child in the custody of another person if for a period of at least one (1) year the parent . . . fails

without justifiable cause to communicate significantly with the child when able to do so . . . ."

Appellants rely heavily on this court's decision in In re Adoption of J.P., 713 N.E.2d 873 (Ind. Ct. App. 1999). In that case, we affirmed a trial court's determination that a mother's consent to adopt J.P. was unnecessary due to her failure to significantly communicate with the child. In August 1995, when J.P. was eight months old, his mother, C.H., was arrested on felony charges and J.P. was placed in the custody of the St. Joseph County Department of Welfare. In July 1996, C.H. requested permission to take J.P. on a visit to Tennessee for one week, and when granted permission, she took J.P. to Tennessee and did not return. In September 1996, allegations of abuse to J.P. led to his removal from C.H.'s care, and J.P. was placed in foster care in Indiana. C.H. remained in Tennessee and did not visit J.P. from September 1996 until January 1997. Beginning in January 1997 until April 1998, C.H. visited J.P. once a month for two to five hours at a time, but C.H.'s visits increased in frequency just prior to the petition for adoption. This court said "[t]he significance of the communication is not measured in terms of units of visits." Id. at 876. Discussing the significance of the communication, the court observed that "J.P.'s reaction to the visits . . . were [sic] not particularly favorable" and that the evidence showed C.H. would not make communication with J.P. a priority. Id. Additionally, the court noted that C.H.'s increased communication just before the filing of the adoption petition did not vitiate the lack of significant communication from September 1996 through April 1998. Id. (citing In re Adoption of Subzda, 562 N.E.2d

745, 750 n.3 (Ind. Ct. App. 1990) (when gauging significant communication, the one-year period need not immediately precede the filing of the petition)).

Appellants use In re Adoption of J.P. to make two arguments in this case. First, they point out that Mother's visitation—only a few hours per week—was similar to that in In re Adoption of J.P. and thus should not be considered "significant." Second, Appellants latch on to the idea that the critical one-year period need not immediately precede the filing of the petition; seeking to take advantage of that point, Appellants argue "Mother lacked significant communication with R.W. during May 2010 through May 2011," which was a one-year period that came and went a full year and one-half before the adoption petition was filed. Appellant's Br. at 25.

As to Appellants' first argument, we simply observe the trial court's statement that "what is significant and meaningful is in the eyes of the beholder," Appellant's App. at 57. The trial court concluded the communication in this case was significant under the circumstances.[1] We are not in a position to reweigh the evidence on that point. Regarding Appellants' second argument, even if the communications between Mother and R.W. did appear insignificant between May 2010 and May 2011, it would not lead us to reverse the trial court's decision. It is undisputed that Mother's communication with R.W. increased in the two years after May 2011. It would defy logic to allow a long-past, one-year period of poor communication to overcome a lengthy period of significant communication that immediately precedes the adoption petition.

---

[1] It is noteworthy that the trial court here found that R.W. loves Mother and that the visits generally went well, which contrasts greatly from the situation in In re Adoption of J.P. where "J.P.'s reaction to the visits . . . were [sic] not particularly favorable." 713 N.E.2d at 876.

11

Finally, Father's act of prohibiting communication between Mother and R.W. for over a year from September 2012 until the date of the hearing is significant. "Efforts of a custodial parent to hamper or thwart communication between a parent and child are relevant in determining the ability to communicate." In re Adoption of A.K.S., 713 N.E.2d 896, 899 (Ind. Ct. App. 1999), trans. denied. Father's efforts to thwart Mother's communication with R.W. are inseparably linked to the issue of Mother's communication with R.W., and the trial court was correct to consider Father's actions and weigh them in Mother's favor.

Under the circumstances, we conclude the trial court's finding as to the significance of Mother's communications with R.W. was not clearly erroneous.

### D. Mother's Support for R.W.

Last, Appellants contend the trial court erred by finding that Mother's consent to adopt was required where she failed to support R.W. for over one year. Appellants base this argument on Indiana Code section 31-19-9-8(a)(2)(B), which provides that consent to adopt is not required from "[a] parent of a child in the custody of another person if for a period of at least one (1) year the parent . . . knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree."

Indeed, Mother testified at the hearing that she has never given Father money as support for R.W. However, that is not the end of the inquiry. The statute specifically contemplates a parent's ability to pay "as required by law or judicial decree." Id. As we discussed previously, based on the parents' child support order, Mother was only responsible for one-half of R.W.'s medical, pharmaceutical, and dental expenses. Father

12

does not point to evidence in the record that he ever made Mother aware of any such expenses, and the trial court noted that Father "never made an issue of [Mother] providing any assistance" prior to this case.[2]  Appellant's App. at 57.

This court has also recognized that a parent's nonmonetary contribution to a child's care may be counted as support.  See In re Adoption of M.B., 944 N.E.2d 73, 77 (Ind. Ct. App. 2011).  Mother testified at the hearing that she has attempted to clothe R.W. and provide him with other necessities.  These attempts, however, were largely hindered by Father's refusal to communicate with Mother and by the trial court's order prohibiting Mother from giving R.W. gifts at times other than birthdays and holidays. Under these circumstances, especially considering the court orders limiting Mother's obligation and ability to provide support for R.W., we cannot conclude the trial court's refusal to dispense with Mother's consent to adopt for failure to support R.W. is clearly erroneous.

## II.  Termination of Mother's Parenting Time

Next, Father claims the trial court erred by denying his request to terminate Mother's parenting time.  A trial court may modify parenting time rights "whenever modification would serve the best interests of the child. However, the court shall not restrict a parent's parenting time rights unless the court finds that the parenting time might endanger the child's physical health or significantly impair the child's emotional development."  Ind. Code § 31-17-4-2.  Indiana has recognized that a noncustodial

---

[2]  A large portion of Appellants' argument on this issue deals with Mother's current income and her supposed ability to pay additional child support.  Appellants also appear to attack the trial court's original support order and claim that Mother's support obligation should be greater.  We believe those arguments are properly made in a petition to modify Mother's child support obligation, not here.

parent's right to visit her children is a "precious privilege." D.B. v. M.B.V., 913 N.E.2d 1271, 1274 (Ind. Ct. App. 2009) (citation omitted). Thus, we approach requests for an outright restriction on parenting time with caution, and such a restriction requires a finding that the parenting time "might endanger the child's physical health or significantly impair the child's emotional development." Id. (citing Ind. Code § 31-17-4-2). "Even though the statute uses the word 'might,' this Court has previously interpreted the language to mean that a court may not restrict parenting time unless that parenting time 'would' endanger the child's physical health or emotional development." Id. (citation omitted).

When reviewing a trial court's decision regarding a modification of parenting time, we give great deference to that decision. Duncan v. Duncan, 843 N.E.2d 966, 969 (Ind. Ct. App. 2006), trans. denied. Thus, we will reverse only upon a manifest abuse of the trial court's discretion. Id. We will neither reweigh the evidence nor judge witness credibility. Id.

Father urges the trial court abused its discretion by not restricting Mother's parenting time. He points to Mother's history with drug abuse, and he directs us to testimony given by R.W.'s teacher, indicating that R.W. has shown improvement since September 2012. Father believes that testimony proves that "Mother's contact with R.W. was adversely effecting him emotionally." Appellant's Br. at 28. Father's argument is a straightforward request to reweigh the evidence. The record supports the trial court's finding that Mother "is drug free, is no longer in an abusive relationship and is receiving mental health treatment." Appellant's App. at 65. We conclude the trial court's decision

14

to deny Father's request to terminate Mother's parenting time was not an abuse of discretion.

### III. Civil Protection Order[3]

Finally, Father argues the trial court erred by denying his request for a permanent protection order against Mother. When reviewing the sufficiency of evidence to support a protection order, we will neither reweigh the evidence nor judge witness credibility. Maurer v. Cobb-Maurer, 994 N.E.2d 753, 755 (Ind. Ct. App. 2013). We consider only the probative evidence and reasonable inferences drawn therefrom that support the trial court's judgment. Id.

In the trial court's order denying Father's petition for a protection order, it stated in relevant part:

> [T]here was no evidence to suggest that any continuing problems have occurred between the parties for several months even if at one time there might have been issues. Assuming that there were issues in the past, [F]ather does not have clean hands in this matter, as he was inappropriately denying the mother visitation rights to her son at that time, which could have contributed to the issues between them.

---

[3] We take note of the trial court's apparent lack of urgency in ruling on Father's petition for a protection order. Father was granted an ex parte order for protection on October 22, 2012, which was set to expire November 19, 2012. The trial court originally set a hearing on the matter for November 19, 2012. The matter was then consolidated with the paternity and adoption causes involving Mother and Father, and this "temporary" ex parte order was repeatedly extended without a hearing, remaining effective for an entire year until the trial court's order on October 15, 2013. The Indiana Civil Protection Order Act ("CPOA") contemplates a hearing after an ex parte order will be held much quicker. See Ind. Code § 34-26-5-10(a). The chronological case summary is unclear as to why the hearing on this matter was pushed back eleven months after the ex parte order—although possible, it seems highly unlikely that this was done at Mother's request. In any event, we do not believe our legislature intended such lengthy delay. Among the CPOA's stated goals is the protection and safety of all victims of domestic violence in a "fair, prompt, and effective manner." Ind. Code § 34-26-5-1. Further, the existence of the consolidated paternity and adoption proceedings in this case is hardly an excuse because the CPOA specifically states that "[a] court may not delay granting relief because of the existence of a pending action between the petitioner and respondent." Ind. Code § 34-26-5-6(3). Given the trial court's conclusion that a protection order was unwarranted and that Mother faces at least one criminal charge as a result of violating the ex parte order for actions that took place well beyond the order's original expiration date, we find the delay in this case disturbing.

15

Appellant's App. at 67. The order denying Father's motion to correct error stated in relevant part:

> After [Father unilaterally stopped Mother's visitation], he then received his pro se protective order due to allegations against [Mother] that is alleged to have occurred after he stopped visitation. [Mother] supposedly on two occasions honked her horn in front of [Father's] house and one time "reved" [sic] her engine yelling "die mother fu…er." The logical assumption is that, if true, this was due to [Father] recently stopping her visitation. . . . This Court will not grant a permanent protective order based upon these weak self-serving allegations that resulted from [Father's] own actions which violated a Court order.

Id. at 54.

Protection orders are in the nature of injunctions, and therefore, the trial court must make special findings of fact and conclusions thereon in accordance with Indiana Trial Rule 52(A). Hanauer v. Hanauer, 981 N.E.2d 147, 148 (Ind. Ct. App. 2013). Here, the trial court's orders do not comply with Indiana Trial Rule 52(A), and there are not findings sufficient to facilitate appellate review on this issue. As to the material facts, the findings of the trial court are noticeably vague and indeterminate. The court refers to what "might" have occurred and actions that Mother "supposedly" committed, and the court made its decision "[a]ssuming that there were issues in the past." Appellant's App. at 54, 67. At no point did the trial court make a factual finding as to the veracity of Father's allegations. Simply stated, the trial court made no findings of fact relevant to the grant or denial of a protection order.

It is entirely possible that the trial court believed that Father did not prove by a preponderance of the evidence that he truly felt harassed by Mother's alleged conduct. Alternatively, one might infer from the trial court's order that the trial court believed

every word of Father's story, but because Father already received a full year's benefit of a protection order and because Mother's conduct was a product of Father's refusal to allow visitation, further extension of the protection order was unnecessary to protect Father after resolution of the visitation issue.[4] Of course, all of this is pure speculation, and it is the trial court's prerogative to make findings of fact in these circumstances, not ours. Suffice it to say, we conclude the trial court's order failed to make factual findings required by Indiana Trial Rule 52(A), and thus, we remand for further proceedings on this issue.

## Conclusion

We conclude the trial court's decision to deny Grandmother's petition for adoption was not clearly erroneous, and the trial court did not abuse its discretion by denying Father's request to terminate Mother's parenting time. Therefore, we affirm the trial court's orders as to the issues of adoption and parenting time. However, we conclude the trial court's orders on Father's petition for a protection order did not comply with Indiana Trial Rule 52(A), so we remand for further proceedings on that issue.

Affirmed in part and remanded.

BAKER, J., and KIRSCH, J., concur.

---

[4] On appeal, Father argues "[t]he court may not find the occurrences to be so outdated as to no longer require a protective order." Appellant's Br. at 30. That not entirely accurate. The trial court <u>can</u> consider the remoteness of incidents in determining whether an order is warranted, but that remoteness cannot be the <u>sole</u> reason for denial of a protection order. <u>See</u> <u>Tons v. Bley</u>, 815 N.E.2d 508, 511 (Ind. Ct. App. 2004); <u>see</u> <u>also</u> Ind. Code § 34-26-5-13.