## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 30 2018, 6:26 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Craig Goedde
Johnson Carroll Norton Kent & Goedde, P.C.
Evansville, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re Adoption of A.R.,<br>S.R.,<br>*Appellant-Respondent,*<br><br>v.<br><br>J.W.,<br>*Appellee-Petitioner.* | May 30, 2018<br><br>Court of Appeals Case No.<br>82A01-1710-AD-2426<br><br>Appeal from the Vanderburgh<br>Superior Court<br><br>The Honorable Brett J. Niemeier,<br>Judge<br><br>The Honorable Renee Allen<br>Ferguson, Magistrate<br><br>Trial Court Cause No.<br>82D04-1505-AD-48 |

**Mathias, Judge.**

[1]     S.R. appeals the trial court's decree of adoption allowing M.W. to adopt S.R.'s minor child, A.R., after concluding that S.R.'s consent to the adoption was not

necessary. S.R. argues that the evidence does not support the trial court's conclusion that his consent was not necessary.

We affirm.

## Facts and Procedural History

A.R. was born to S.R. and J.W. ("Mother") in February 2002. S.R.'s and Mother's marriage was dissolved in 2008, and they agreed to share physical and joint legal custody of A.R. Because they agreed to share physical custody and agreed to equally divide A.R.'s expenses, no child support order was issued.

S.R. was abusive toward Mother during their marriage, and A.R. was often present and witnessed the abuse. In 2008, the same year the marriage was dissolved, Mother obtained a protective order against S.R. He violated the protective order and was convicted of misdemeanor invasion of privacy.

There was no change to the parties' agreement until August 2014 when S.R.'s parenting time was limited to supervised parenting time through the Parenting Time Center. Prior to this date, S.R. had not exercised regular parenting time, in part due to an injury suffered in a work-related accident and out-of-state employment. During this time, S.R. sporadically communicated with A.R. via telephone calls and text messages.

S.R. initially refused to participate in supervised parenting time. S.R. also failed to respond to Mother's requests for reimbursement of A.R.'s medical and school expenses.

In April 2015, S.R. filed a petition to modify visitation and child support. On May 13, 2015, A.R.'s stepfather, M.W., filed a petition to adopt her.[1] The petition alleged that S.R.'s consent to the adoption was not necessary. S.R. filed a notice to contest the adoption on June 5, 2015. Mother later filed a motion to terminate S.R.'s parenting time in the dissolution proceedings.

On November 19, 2015, the parties agreed to consolidate the adoption proceedings with their dissolution proceedings. The hearings on the adoption petition were held on September 26 and 27, 2016, October 3, 2016, and January 11, 2017. The trial court issued findings of fact and conclusions of law on March 20, 2017.[2] The trial court found:

> 9. On September 22, 2016, Guardian Ad Litem Amy Brandsasse filed a 14 page report concerning the issues at hand,[3] recommending adoption as in the best interests of the minor child. In her report and testimony at the time of trial, she found that child had signed a consent to her adoption, does not have a bond with Father, never had a healthy bond with Father, is fearful of Father due to her experiences with him, and specifically had an "increase in anxiety, poor sleep and nightmares and worrying thoughts" concerning the possibly of seeing Father after two years of not having contact with him. Child's memories and reasons given were those of her own, some of which Mother was unaware when questioned by the Guardian Ad Litem.

[1] Mother and M.W. were married in April 2014.

[2] The trial court adopted J.W.'s proposed findings of fact and conclusions of law on this date.

[3] The trial court took judicial notice of the guardian ad litem's report. The report was not included in the record on appeal.

10. Brandsasse further testified that she found that Mother was not influencing the child concerning what to say or think and had not found evidence that Mother kept child away from Father. Brandsasse further testified that the child expressed her personal refusal to speak to Father on the phone consistently, and child gave the reason that Father would get angry and yell on the phone at her and/or her Mother to the point that others in the room could hear his yelling.

11. Brandsasse found the child to be intelligent, mature for her age and consistent in her accountings over the years of therapy and currently. Child recounted events regarding domestic violence between Mother and Father, and she reported Father being repeatedly intoxicated to the point of being unable to respond to her or driving with her while intoxicated. The child's information established that Father was not fit to parent.

12. Brandsasse spoke to the Maternal Grandmother who recounted domestic violence between Father and Mother, that Father was not attentive to [A.R.]'s needs and not "fatherly," and she witnessed [A.R]'s refusal to speak with or have interaction with her Father. Grandmother further became emotional when discussing how step-father was so good, loving and kind with [A.R.] and the relationship between him, Mother and [A.R.]. She described Step-father and [A.R.'s] relationship as "precious."

13. Brandsasse reviewed Father's hospital records which were consistent with the angry persona witnessed by the child wherein the records reflected his anger towards his own family members such that they left the hospital, reporting to the staff why they were leaving.

14. Brandsasse further reported that Father was not truthful in his reporting. He contacted the child's therapist informing her that he needed to set up visits through the therapist as his visits at The

Parenting Time Center had been discontinued which was not true.

15. Father also reported to Brandsasse that he did not have drug and alcohol problems and had never been fired from employment. In review of his employment records, she found that he had been terminated for testing positive for drugs while on the job, had been terminated for failing to show for work and that employment records document a history of substance abuse inconsistent with Father's assertions.

16. Father made these same assertions in his depositions submitted by the Mother.

17. Further, Mother submitted the therapist record that shows that Father had called the child's therapist on November 20, 2015, indicating that Father did have the contact information contrary to his pleading on January 22, 2016.

18. Kathryn Kornblum from the Parenting Time Center testified concerning her personal observations and interaction with the child and the parties.

19. Kornblum testified that she received the August 1, 2014 order requiring Father's parenting time to be exercised through the Parenting Time Center. Mother had completed her intake on August 12, 2014. Kornblum stated that after she spoke with the Father, she submitted a Notice to the Court filed on September 23, 2014 stating that Father had refused their services. At that time, the Parenting Time Center had grant monies which would have allowed for services to be provided for little to no cost to Father due to the domestic violence that had been involved. She did not hear from Father again until approximately one year from the order with the first visit occurring September 15, 2015 that lasted one half hour, with another half hour visit on

September 22, 2015. On September 29, 2015, the child left the visit and requested visits be terminated without the Mother being present. Kornblum filed her Notice to the Court that prior to resuming visits at The Parenting Time Center, the parties would need therapeutic visitation.

20. Kornblum testified that in her interactions with the child, she observed that the child had no bond with Father, and further, she did not believe Mother to be influencing the child in such a manner to alienate the child. She stopped visits based upon the child's reaction to the Father, her conversations with the child and her belief that supervised parenting time with the Father was not appropriate at this time.

21. Neither Kornblum nor Brandsasse believed that therapeutic parenting time or visitation would necessarily aid in restoring the parent-child relationship between the child and Father nor could they state it was in the child's best interests.

22. On May 16, 2016, law enforcement was called to Father's residence due to his being intoxicated at his home and having a gun in his possession. His current girlfriend had reported the incident as it was occurring to the police.

23. Mother testified that Father had not supported [A.R], and she had filed Informations for Contempt and Petitions to Modify in order to obtain a valid continuing and regular support order and to protect [A.R.] from unsafe conditions while in Father's care. She also submitted her filed pleadings consistent with her testimony and the dissolution's chronological case summary.

24. She further testified that she had been unaware of Father's whereabouts at various times even though she maintained a good relationship with Paternal Grandparents. She was unable to get

good service on the Father. She had been attempting to receive child support for multiple years.

25. Mother submitted Father's employment records from Penske, Gibco, Thornton's and C.R. England. The addresses on the chronological case summaries are consistent with the addresses revealed in Father's employment records.

26. Step-father testified that Father had come to their home a couple of times to visit but had not had contact for a couple years until he started calling again after the adoption petition was filed. He testified that he had observed [A.R.'s] reactions to her Father which were fearful and anxious. Step-father sought to adopt [A.R.] because he had been providing for her care as long as they had all resided together. He testified that he loved her and supported her in her academic and extracurricular activities, and they were a family.

Appellant's App. Vol. II, pp. 59–63. The trial court concluded that S.R.'s consent to the adoption was not required because he failed to communicate with A.R. for more than one year, failed to support A.R. for more than one year, and that S.R. is unfit to parent A.R.

[9] For some unknown reason, the decree of adoption was not issued until August 8. 2017.[4] Thereafter, S.R. filed a motion to correct error, which was denied. S.R. now appeals.

---

[4] Both Judge Niemeier and Magistrate Ferguson signed the findings of facts and conclusions of law which concluded that S.R.'s consent to the adoption was not necessary, but only Magistrate Ferguson signed the adoption decree. Magistrates "may not enter a final appealable order unless sitting as a judge pro tempore or a special judge." Ind. Code § 33-23-5-8(2). Judge Niemeier and Magistrate Ferguson have repeatedly been

# Standard of Review

[10] Initially, we observe that Mother and M.W. did not file an appellee's brief. When an appellee does not submit a brief on appeal, we need not undertake the burden of developing an argument on his behalf. *Trinity Homes, LLC v. Fang*, 848 N.E.2d 1065, 1068 (Ind. 2006). Rather, we will reverse if the appellant's brief establishes a case of *prima facie* error. *Id*. *Prima facie* error in this context is error "at first sight, on first appearance, or on the face of it." *Id*. If the appellant is unable to meet this burden, we will affirm. *Id*.

[11] Pursuant to statute, a trial court shall grant a petition for adoption if the adoption is in the child's best interest, the petitioners are sufficiently capable of rearing and supporting the child, and proper consent, if required, has been given. Ind. Code § 31-19-11-1(a). We will not disturb a trial court's ruling in an adoption proceeding unless the evidence leads only to the conclusion opposite that of the trial court. *E.W. v. J.W.*, 20 N.E.3d 889, 894 (Ind. Ct. App. 2014), *trans. denied*. "Appellate deference to the determinations of our trial court judges, especially in domestic relations matters, is warranted because of their unique, direct interactions with the parties face-to-face, often over an extended period of time." *Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011). We do not reweigh evidence, and we consider evidence most favorable to the decision

---

advised of the limits on the power of a magistrate. *See e.g. In re Adoption of I.B.*, 32 N.E.3d 1164, 1173 n.6 (Ind. 2015); *In re D.F.*, 83 N.E.3d 789, 794-95 (Ind. Ct. App. 2017). Because S.R. has not raised an objection to the authority of the magistrate in this case, we address his appeal on its merits.

together with reasonable inferences drawn from that evidence. *E.W.*, 20 N.E.3d at 894. Where, as here, an adoption petition is filed without the required parental consent, the party seeking to adopt bears the burden to prove the statutory criteria for dispensing with consent by "clear and convincing evidence." *In re Adoption of M.A.S.*, 815 N.E.2d 216, 220 (Ind. Ct. App. 2004).

[12] In this case, the trial court entered written findings of fact and conclusions of law pursuant to Indiana Trial Rule 52(A). Therefore, we determine whether the evidence supports the findings of fact, and second, we determine whether the findings support the judgment. *In re Adoption of A.S.*, 912 N.E.2d 840, 851 (Ind. Ct. App. 2009), *trans. denied*. Our court "shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." T.R. 52(A).

# Discussion and Decision

[13] Indiana Code section 31-19-9-8 provides that consent to adoption is not required from

> A parent of a child in the custody of another person if for a period of at least one (1) year the parent:
>
> (A) fails without justifiable cause to communicate significantly with the child when able to do so; or
>
> (B) knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree.

The statute also provides that consent is not required from a parent if the petitioner "proves by clear and convincing evidence that the parent is unfit to be a parent" and "the best interests of the child sought to be adopted would be served if the court dispensed with the parent's consent." *Id*. Finally, the statute provides that "if a parent has made only token efforts to support or to communicate with the child the court may declare the child abandoned by the parent." *Id*. The statute is written in the disjunctive, and therefore, proof on any one of the statutory grounds for dispensing with consent is sufficient to support the granting of an adoption petition. *In re Adoption of M.L.*, 973 N.E.2d 1216, 1222 (Ind. Ct. App. 2012).

[14] Ultimately, the primary concern in every adoption proceeding is the best interests of the child. *Id.* at 1224. Even if a court determines that a natural parent's consent is not required for an adoption, the court must still determine whether adoption is in the child's best interests. *See* I.C. § 31-19-11-1(a)(1). In making this determination, the trial court must consider "the totality of the evidence to determine the best interests of a child." *In re Adoption of M.S.*, 10 N.E.3d 1272, 1281 (Ind. Ct. App. 2014). "Relevant factors include, among others, a parent's historical and current inability to provide a suitable environment for the child; the recommendations of the child's case worker or guardian ad litem; and the child's need for permanence and stability." *Id.* at 1281–82 (internal citations omitted).

[15] S.R. argues that the trial court erred when it concluded that his consent to the adoption was not required. He contends that he never failed to communicate

with S.R., but that his attempts at communication were thwarted by Mother. He claims that he supported A.R. by reimbursing Mother for school, medical and extracurricular expenses when he was able to do so. Finally, S.R. argues that Mother and M.W. failed to prove that he is an unfit parent and that the adoption is in A.R.'s best interests. Although the statute is written in the disjunctive, we will address whether sufficient evidence supports the three statutory prongs at issue in this appeal.

*A. Communication*

The test for communication is not whether the noncustodial parent had no communication with the child, but whether he failed without justifiable cause to have significant communication when able to do so. *In re Adoption of S.W.*, 979 N.E.2d 633, 640 (Ind. Ct. App. 2012). "[T]he purpose of this statutory provision is to foster and maintain communication between non-custodial parents and their children, not to provide a means for parents to maintain just enough contact to thwart potential adoptive parents' efforts to provide a settled environment to the child." *Id.*

In August 2014, the trial court ordered S.R. to exercise his parenting time through the Parenting Time Center. S.R. notified the Center that he did not intend to use their services. S.R. did not exercise parenting time with A.R. for over a year because he refused comply with court-ordered supervised visitation. S.R. did not have a justifiable reason for his refusal to exercise parenting time at the Parenting Time Center. *See* Appellant's App. p. 65.

[18] Approximately one year after the court ordered supervised parenting time and after M.W. filed a petition to adopt A.R., S.R. agreed to participate in supervised parenting time. In September 2015, S.R. and A.R. had three visits at the Parenting Time Center. The third visit ended after just five minutes because A.R. did not want to visit with S.R. A.R. was anxious and felt sick to her stomach, and she asked to leave. S.R. has not seen A.R. since that last brief supervised visit.

[19] S.R. occasionally sent texts and made phone calls to A.R., but S.R. did not communicate with A.R. at all during her fifth-grade school year. At some point, A.R.'s phone number changed, and S.R. was not provided with A.R.'s phone number. S.R. sporadically texted or called Mother when he wanted to speak to A.R. A.R. refused to speak with S.R.

[20] S.R. argues that Mother thwarted his attempts to communicate with A.R. But S.R. refused to participate in visitation with A.R. for approximately one year, and he did not communicate with A.R. during her fifth-grade school year. When S.R. called to speak with A.R., if A.R. was available, she was given the option to speak to S.R. but refused. Moreover, S.R.'s attempts to communicate with A.R. resumed and were more frequent after M.W. filed his petition to adopt A.R. For all of these reasons, we conclude that the trial court's finding that, for at least a period of one year, S.R. failed without justifiable cause to communicate *significantly* with A.R. when he was able to do so, is supported by the evidence.

*B. Support*

Next, we address S.R.'s argument that the evidence was insufficient to establish that he supported A.R. Aside from a period of time when S.R. was injured, S.R. was employed, and his employment records were admitted into evidence. A child support order was never issued in the parties' dissolution proceedings, but the parties agreed to equally share expenses because they had joint custody of A.R.

Indiana law imposes a duty upon a parent to support his child. *In re M.A.S.*, 815 N.E.2d at 220. "This duty exists apart from any court order or statute." *Id*. It is well-settled that parents have a common law duty to support their children, and the lack of a court order did not relieve S.R. of that obligation. *See In re Adoption of M.B.*, 944 N.E.2d 73, 77 (Ind. Ct. App. 2011).

Mother filed a petition to modify support in 2011 but was unable to serve S.R. with the petition, and it was dismissed. In 2014, she filed a second petition to modify support. S.R. agreed to pay all of A.R.'s education expenses and $110 per month for A.R.'s medical expenses.

Mother requested reimbursement for these expenses, but S.R. did not reimburse Mother as agreed. The parties entered into mediation after the adoption petition was filed, and S.R. eventually agreed to pay approximately $800 to reimburse Mother for educational and medical expenses. S.R. occasionally deposited money in A.R.'s lunch account and bought her a few clothing items over the years. But generally in the last several years, S.R. has provided minimal

financial support for A.R. despite his ability to do so, and he failed to support A.R. for over a year prior to paying the mediated amount after the adoption petition was filed.

*C. Unfit Parent*

Finally, we address S.R.'s fitness to parent A.R. During the marriage, S.R. abused Mother in A.R.'s presence, traumatizing A.R. S.R. refuses to acknowledge how his actions affected A.R. even though A.R. has been in therapy on multiple occasions, in part, to address the issue.

Also, S.R. was often intoxicated in A.R.'s presence and has driven with A.R. in the vehicle after drinking alcohol. Just prior to the adoption hearings, S.R.'s girlfriend called 911 because S.R. was drinking alcohol and had a gun he was not allowed to possess. S.R. refused to acknowledge any issue with alcohol or drugs despite the fact that he was fired from one of his jobs because he failed a drug test. S.R. denies any drug use even when faced with evidence that he failed a drug test.

S.R. has anger management issues. Moreover, A.R. fears S.R. because of the abuse she witnessed. S.R. often yelled at A.R during their sporadic telephone conversations. When A.R. was told that S.R. might attend her eighth-grade graduation, she refused to attend. S.R. also did not communicate with A.R. either in person or via telephone for significant lengths of time. A.R. does not have a bond with S.R.

[28] For all of these reasons, we agree with the trial court's conclusion that S.R. is unfit to parent A.R. Moreover, adoption is in A.R.'s best interests. A.R. is not bonded with S.R. and fears him. A.R. and her stepfather, M.W., have a loving relationship, and M.W. has provided support for A.R. since his marriage to Mother.

## Conclusion

[29] M.W. proved that S.R. failed to significantly communicate with A.R. or support A.R. for at least one year, and that S.R. is not fit to parent A.R. M.W. also proved that adoption was in A.R.'s best interests. We therefore affirm the trial court's finding that S.R.'s consent to the adoption was unnecessary and affirm the adoption decree.

[30] Affirmed.

Riley, J., and May, J., concur.