## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 22 2020, 9:30 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Katherine N. Worman
Evansville, Indiana

ATTORNEY FOR APPELLEE

Keith M. Wallace
Evansville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN THE ADOPTIONS OF De.D. and Di.D. | July 22, 2020 |
| | Court of Appeals Case No. 19A-AD-2922 |
| P.F. (Mother), *Appellant-Respondent,* | Appeal from the Vanderburgh Superior Court |
| v. | The Honorable Brett J. Niemeier, Judge |
| R.D., *Appellee-Petitioner* | The Honorable Renee Ferguson, Magistrate |
| | Trial Court Cause Nos. 82D04-1812-AD-221 and 82D04-1812-AD-222 |

**Altice, Judge.**

**Case Summary**

[1] P.F. (Mother) appeals the trial court's grant of an adoption petition filed by Ry.D. (Stepmother) for the adoption of Mother's minor children, De.D. and Di.D. (collectively, the Children). In addition to challenging the admission of certain evidence, Mother challenges whether Stepmother presented sufficient evidence to support the trial court's grant of the adoption petition without Mother's consent.

[2] We affirm.

## Facts & Procedural History

[3] Mother and Ri.D. (Father) are the biological parents of the Children. At the time of De.D.'s birth in December 2008, Father and Mother executed a paternity affidavit. Mother and Father were not in a relationship when Di.D. was born in April 2012. Father's paternity of Di.D. was established in a paternity action filed in January 2013.

[4] Father and Stepmother began living together in December 2011 and married in July 2015. Although the record is not clear regarding the initial custody of the Children, it is apparent that Father has had primary physical custody of them since at least May 2013. In an order issued February 2014, the paternity court modified Mother's parenting time and specifically found:

> Mother has anger issues related to her relationship with the Father. These anger issues also have been directed toward the Father's fiancee. The Court further finds that there are issues in the Mother's home with domestic violence involving her significant other. The Court strongly suggests that the Mother

seek counseling to address her anger issues and the issue of domestic violence in her home. The Court retains jurisdiction, upon proper petition from the Father, to further modify or terminate Mother's parenting time with the children if these anger issues and domestic violence issues are not addressed by the Mother.

*Exhibits Vol. I* at 12.

[5] Due to conflicts during exchanges for parenting time, the paternity court ordered, in November 2015, exchanges to be facilitated by the Parenting Time Center (the PTC). Mother exercised parenting time utilizing the PTC through October 2016. After about a six-month break, she began exercising parenting time again in April 2017 but stopped within a month. Thereafter, the PTC had difficulty reaching Mother and she never paid a balance due of $100.

[6] In the meantime, after Mother moved into the YWCA shelter, the paternity court issued an order on July 11, 2016, regarding custody, support, and parenting time, which provided in part:

> 4. Once school begins in the summer/fall of 2016, the Mother's current living situation at the YWCA will no longer be in the children's best interest. If the Mother is still living at the YWCA when school begins, her parenting time will be modified to every other weekend from Saturday at 10:00 a.m. to Saturday at 6:00 p.m. and Sunday at 10:00 a.m. and Sunday at 6:00 p.m. Holidays and Special Days will be according to the Indiana Parenting Time Guidelines but shall not include overnights if the Mother is still residing at the YWCA.

5.  If the Mother can obtain adequate housing for herself and her two (2) children, consisting of at least two (2) bedrooms, and no other adults living in the home with the Mother, then the Mother's parenting time shall be alternating weekends from Friday at 6:00 p.m. to Sunday at 6:00 p.m.  Holidays and Special Days shall be according to the Indiana Parenting Time Guidelines including overnights.

****

9.  All parenting time exchanges shall continue at the Parenting Time Center until further order of the Court.

****

15.  The Court orders temporary child support payable by the Mother to the Father of $50.00 per week effective Friday, July 15, 2016 and each Friday thereafter until further order.  All support to he paid through the Clerk's Child Support Office.  The support amount ordered is less than mandated by the Indiana Child Support Guidelines but he [sic] Court is deviating to allow the Mother to save enough money to get suitable living accommodations for herself and her children.

****

*Id*. at 7-8.

[7]  Mother never paid any child support to Father pursuant to the July 2016 order, and she last exercised parenting time with the Children on May 21, 2017. According to Mother, she lived at the YWCA for about four months and then moved in with her mother in late 2016.  Mother obtained her own housing in

May 2018. At the time of the July 2016 order, Mother had a part-time job, and she obtained full-time employment by early 2017.

[8] On December 5, 2018, Stepmother filed the instant petitions to adopt the Children, alleging that Mother's consent was not required pursuant to Ind. Code § 31-19-9-8. Father's consents to the stepparent adoptions were filed along with the petitions. After receiving notice, Mother timely objected to the petitions, and the trial court appointed counsel for her.

[9] A contested hearing was held on June 24 and August 7, 2019, regarding whether Mother's consent was required. The trial court took the matter under advisement and then issued its order on October 15, 2019, which included findings of fact. Ultimately, the court concluded that Mother's consent was not required because (1) Mother had failed without justifiable cause to communicate significantly with the Children for more than a year and (2) she willfully failed to pay child support for well in excess of a year when able to do so. On November 14, 2019, the trial court held a final hearing on the adoption petitions and approved the adoptions as in the best interests of the Children. Mother now appeals. Additional facts will be provided below.

## Discussion & Decision

### 1. Evidentiary Rulings

[10] Mother challenges the trial court's admission of two exhibits at the consent hearing. We review such challenges for an abuse of discretion. *Snow v. State*,

77 N.E.3d 173, 176 (Ind. 2017). "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances." *Id*.

[11] We turn first to Petitioner's Exhibit 4, which was admitted over Mother's objection. This exhibit is a certified chronological case summary (CCS) of a pending criminal matter involving Mother. The exhibit indicates that Mother had a felony theft charge filed against her in June 2015. She pled guilty in September 2015, and judgment of conviction was withheld in order for her to enter a pretrial diversion program. Following two hearings where Mother failed to appear, the criminal court held a sentencing hearing in March 2017, at which the court placed Mother on one year of probation and ordered restitution but still withheld judgment, indicating that it would enter the conviction as a Class A misdemeanor if Mother was successful with probation. She was not, and a warrant was issued for her arrest in January 2018. On December 6, 2018, Mother appeared, now in custody, for another hearing, at which the criminal court extended her probation by five months but indicated that she could "still earn a misdemeanor". *Exhibits Vol. I* at 25. After Mother again failed to appear for a hearing, the criminal court issued a warrant for her arrest on May 9, 2019, which was recalled. This criminal matter remained pending at the time of the adoption hearing.

[12] Mother argues on appeal, as she did below, that Petitioner's Exhibit 4 was not admissible under Ind. Evidence Rule 609 to impeach her credibility because the felony theft – though a crime of dishonesty – had not been reduced to a

conviction.[1] Mother is technically correct. Although she had already pled guilty to felony theft, the CCS indicates that judgment of conviction had been withheld by the criminal court.

[13] As an alternate basis for admissibility, Stepmother argued at trial that the evidence regarding the pending felony theft case was relevant to her claim that one reason to dispense with consent was that Mother was unfit to parent. We agree that the evidence was at least minimally relevant for this purpose, and Mother does not present any developed argument otherwise. Indeed, the CCS reflected that in the four years preceding the adoption consent hearing, Mother had been given several chances for lenient treatment by the criminal court and repeatedly failed due to noncompliance. The trial court did not abuse its discretion by admitting Petitioner's Exhibit 4.

[14] The trial court also admitted Petitioner's Exhibit 5 over Mother's objection. This exhibit was an uncertified CCS of a misdemeanor theft case involving Mother. The CCS reflected charges filed in the Vanderburgh Superior Court on September 2016 to which Mother pled guilty in July 2017 and received a 90-day suspended sentence. Mother then failed to appear for subsequent review

---

[1] Evid. R. 609(a) provides: "(a) For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime or an attempt of a crime must be admitted but only if the crime committed or attempted is (1) murder, treason, rape, robbery, kidnapping, burglary, arson, or criminal confinement; or (2) a crime involving dishonesty or false statement, including perjury."

hearings, and a bench warrant remained pending at the time of the adoption consent hearing.

[15] On appeal, as she did below, Mother argues that this exhibit was inadmissible because it was an uncertified public record. Stepmother, however, requested the trial court to take judicial notice of the CCS. Ind. Evidence Rule 201(b)(5) "permits courts to take judicial notice of 'records of a court of this state,' precisely as the trial court did here." *Horton v. State*, 51 N.E.3d 1154, 1160 (Ind. 2016) (quoting Evid. R. 201(b)(5)). Accordingly, we find no error.

*2. Sufficiency*

[16] Mother contends there was insufficient evidence to support the trial court's conclusion that her consent to the Children's adoption by Stepmother was not required. Our standard of review is well settled:

> We will reverse a trial court's decision in an adoption proceeding only if the evidence leads to one conclusion and the trial court reached the opposite conclusion. *E.W. v. J.W.*, 20 N.E.3d 889, 894 (Ind. Ct. App. 2014), *trans. denied*. "We do not reweigh evidence, and we consider the evidence most favorable to the decision together with reasonable inferences drawn from that evidence." *Id*. We also recognize that trial courts are in the best position to judge facts, determine witness credibility, ascertain family dynamics, and evaluate the parents and their relationship with their child or children. *Id*.

*Adoption of E.M.L.*, 103 N.E.3d 1110, 1115 (Ind. Ct. App. 2018), *trans. denied*.

Further, where the trial court enters findings of fact and conclusions, as in this case, we apply a two-tiered standard of review, determining: (1) whether the evidence supports the findings of fact and (2) whether the findings support the judgment. *Id*. We will not set aside the findings or judgment unless they are clearly erroneous. *Id*.

In relevant part, I.C. § 31-19-9-8(a) provides that consent to adoption is not required from any of the following:

> (1) A parent or parents if the child is adjudged to have been abandoned or deserted for at least six (6) months immediately preceding the date of the filing of the petition for adoption.
>
> (2) A parent of a child in the custody of another person if for a period of at least one (1) year the parent:
>
>> (A) fails without justifiable cause to communicate significantly with the child when able to do so; or
>>
>> (B) knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree.
>
> ****
>
> (11) A parent if:
>
>> (A) a petitioner for adoption proves by clear and convincing evidence that the parent is unfit to be a parent; and
>>
>> (B) the best interests of the child sought to be adopted would be served if the court dispensed with the parent's consent.
>
> ****

Stepmother alleged each of the alternative bases set out above in support of her claim that Mother's consent was not required. The trial court found that the evidence established the two bases set out in I.C. § 31-19-9-8(a)(2). That is, for at least a year prior to the filing of the adoption petition, Mother failed to communicate significantly with the Children and failed to support them.

[19] With respect to lack of support, the trial court made the following findings:

> 26. Petitioner's Exhibit 1 is an order from the two paternity causes between the father and mother which states that effective July 11, 2016 [Mother] was to pay child support in the amount of $50/week.
>
> 27. [Mother] testified about several jobs she had during the relevant time period.
>
> 28. [Mother] testified that she has never paid child support because she doesn't think she should have to pay child support.
>
> 29. [Mother] testified that she could have paid child support.
>
> 30. This Court finds that Mother willfully chose not to pay child support from 7/11/2016 through the date of the filing of the adoption petitions even though according to her testimony she could have paid child support.
>
> 31. Petitioner's Exhibit 16 is a certified record from the Vanderburgh County Clerk's office that [Mother] did not pay any child support from July 11, 2016 through the date of filing of the adoption petitions on December 5, 2018.

*Appellant's Appendix Vol. III* at 20-21. Based on these findings, the trial court concluded that pursuant to I.C. § 31-19-9-8(a)(2)(B) Mother's consent was not required due to Mother's "failure to pay child support for a period far in excess

of one year, specifically from July 11, 2016 forward which totaled a period of almost 2 and ½ years at the time the petition was filed on December 5, 2018 when according to [Mother's] own testimony she could have paid child support." *Appellant's Appendix Vol. III* at 21.

[20] On appeal, Mother does not directly challenge any of the findings set out above, nor does she dispute that she failed to pay even a single $50 weekly support payment as required by the July 2016 order. Her argument on appeal is simply that she did not have the ability to make the child support payments because she was living in a shelter at the time the support order was issued and, though she worked throughout the relevant time period, some of her jobs were only part-time. Acknowledging that "she had a small support order and [] did poorly in her attempts to meet it," Mother suggests that "there is some evidence that [she] provided direct support" through gifts and items that she purchased for the Children. *Appellant's Brief* at 19. We reject Mother's invitation to reweigh the evidence.

[21] Indeed, Stepmother was required to prove at the hearing that Mother had the ability to pay child support but that Mother knowingly failed to do so. *E.M.L.*, 103 N.E.3d at 1116. Here, in fact, the trial court expressly found that Mother willfully failed to pay support for well in excess of a year when able to do so. The evidence establishes that the amount of the support ordered in July 2016 was set intentionally low so that she could save money for suitable living accommodations for herself and the Children. Mother was employed at the time the support order was entered, and her employment situation improved

over time. By early 2017, she was working full-time and continued to work through the filing of the adoption petitions. Yet she never paid child support. Mother's own testimony reveals that this was intentional and not due to an inability to make the small weekly support payments. When asked by her own counsel whether she had the ability to make the payments between May 2017 and December 2018, Mother responded, "Yeah, I could've." *Transcript* at 81. She continued, "I was buying stuff for my household and taking care of my kids on my own self instead of giving him $50.00 for his household." *Id.* Further, Mother's claim that she was taking care of the Children when in her household is refuted by the undisputed fact that she did not exercise parenting time (*i.e.* have the Children in her care) after May 2017, not even after she obtained her own housing a year later.

[22] The trial court's determination that Mother willfully chose not to pay child support for more than a year prior to the filing of the adoption petitions despite having the ability to pay is supported by the evidence and not clearly erroneous. Thus, Mother's consent to the adoptions was not required. *See* I.C. § 31-19-9-8(a)(2)(B).

[23] Though it is not necessary for us to reach the alternative basis for dispensing with Mother's consent, we briefly address it. The trial court entered detailed findings of fact regarding Mother's limited contact with the Children between late May 2017 and December 5, 2018. In this period of more than a year leading up to the filing of the adoption petitions, the trial court found that Mother had only two contacts with the Children. One occurred on June 8,

2017, when Mother attended the graduation at Di.D.'s preschool and briefly interacted with the Children. Mother's second and only other contact during this time was about six months later, on December 14, 2017, when she went to the Children's school and had lunch with De.D. and then stopped by Di.D.'s classroom. Mother claimed during her testimony to have seen the Children several other times at school and elsewhere, but other evidence presented at the hearing conflicted with her account. Further, in its findings, the trial court specifically found that Mother was not a credible witness, and the court detailed its many reasons for so finding. Finally, we note that the trial court found that Mother could have exercised parenting time at the PTC during the relevant time period, but she chose not to and refused to pay a $100 fee to the PTC. The trial court's findings are supported by the evidence and the findings support its conclusion that, without justifiable cause, Mother failed to communicate significantly with the Children for a period of more than a year when she was able to do so.

[24] In passing, Mother also argues on appeal that Stepmother's adoption of the Children is not in their best interests. *See In re Adoption of M.S.*, 10 N.E.3d 1272, 1281 (Ind. Ct. App. 2014) (citing I.C. § 31–19–11–1(a)(1)). In this regard, Mother directs us to her own testimony at the consent hearing in which she disparaged Father's character, claimed that she now has suitable income and housing, and claimed to have had very meaningful contact with the Children. The trial court was not required to, and in fact did not, believe Mother's generally unsupported and self-serving testimony. The evidence favorable to

the judgment reveals that Stepmother has actively helped raise the Children for many years and continued to do so when Mother essentially dropped out of their lives in the middle of 2016 until after the adoption petitions were filed in December 2018. The trial court's determination that adoption is in the best interests of the Children is not clearly erroneous.

[25] Judgment affirmed.

Bailey, J. and Crone, J., concur.